**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | |
| Plaintiff, | CIVIL ACTION NO.: |
| -- against – | JURY TRIAL DEMANDED |
| **TRENDON T. SHAVERS AND BITCOIN SAVINGS AND TRUST,** | |
| Defendants. | |

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against defendants Trendon T. Shavers ("Shavers") and Bitcoin Savings and Trust ("BTCST," and together with Shavers, "Defendants") alleges as follows:

## SUMMARY

1. This case involves fraudulent offers and sales of securities by Shavers and BTCST, a Bitcoin-denominated Ponzi scheme founded and operated by Shavers.

2. Bitcoin ("BTC") is a virtual currency that may be traded on online exchanges for conventional currencies, including the U.S. dollar, or used to purchase goods and services online. BTC has no single administrator, or central authority or repository.

3. From at least September 2011 to September 2012 ("relevant period"), Shavers, operating under the Internet name "pirateat40," offered and sold BTCST investments over the Internet, raising more than 700,000 BTC in principal investments from BTCST investors, or more than $4.5 million based on the daily average price of BTC when the BTCST investors purchased their BTCST investments.

4.      Shavers falsely promised investors up to 7% interest weekly based on BTCST's purported BTC market arbitrage activity, including selling BTC to individuals who wished to buy BTC "off the radar," quickly, or in large quantities.

5.      In reality, the BTCST offering was a sham and a Ponzi scheme whereby Shavers used new BTCST investors' BTC to pay the promised returns on outstanding BTCST investments and misappropriated BTCST investors' BTC for his personal use.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to Sections 20 and 22 of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77t and 77v] and Sections 21and 27 of the Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u and 78aa].

7.      Venue is proper in this district under Section 22(a) of the Securities Act and Section 27 of the Exchange Act [15 U.S.C. §§ 77v(a) and 78aa] because Defendants may be found in and are inhabitants of McKinney, Texas; and because certain of the acts, practices, transactions and courses of business alleged herein occurred within the Eastern District of Texas.

## DEFENDANTS

8.      **Trendon T. Shavers**, age 30, who resides in McKinney, Texas, is the founder and operator of BTCST.

9.      **BTCST**, formerly known as First Pirate Savings & Trust, is an unincorporated entity with no brick and mortar presence. The BTCST investments Defendants offered and sold to the investing public as alleged herein constitute "securities" as defined by Section 2(a)(1) of the Securities Act [15 U.S.C. § 77b(a)(1)] and Section 3(a)(10) of the Exchange Act [15 U.S.C. §

77c(a)(10)]. BTCST's securities were not traded on any exchange and BTCST has not filed any registration statements as to its securities with the Commission.

## FACTS

*Defendants' BTCST Offering and Misrepresentations to Investors*

10. On or about November 3, 2011, Shavers, under the Internet name pirateat40, posted a general solicitation for BTCST, entitled "Looking for Lenders," on the Bitcoin Forum, an online forum dedicated to BTC where, among other things, numerous BTC-denominated investment opportunities were posted. The solicitation stated that a minimum of 50 BTC was required to invest.

11. In the November 3, 2011 solicitation on the Bitcoin Forum, Shavers wrote that he was in the business of "selling BTC to a group of local people" and offered investors up to 1% interest daily "until either you withdraw the funds or my local dealings dry up and I can no longer be profitable."

12. On or about November 11, 2011, when asked by another participant on the Bitcoin Forum how he was able to make such high profits, Shavers replied: "Groups of people that want to be off the radar, buy large quantities, and instant availability. I would say it's the Hard Money sector of Bitcoin."

13. On or about November 13, 2011, in a post on the Bitcoin Forum, Shavers wrote: "Hey all, I have some big orders coming in this week. I just wanted to thank all of my investors as I'm able to fulfill them without the risk of them going elsewhere. Still looking for about 1,000

BTC total in lenders based on negotiations with my buyers in the coming weeks. It's growing, it's growing!"

14. On or about November 22, 2011, in a post on the Bitcoin Forum, Shavers wrote: "As with any movements in the market up or down I have enough order activity going on that my risk is very limited. In most cases the coins go uncovered less than a few hours, I have yet to come close to taking a loss on any deal. With that said, in the event there was a huge change in the market and I needed to personally cover the difference I am more than willing to do so."

15. On or about December 19, 2011, in a post on the Bitcoin Forum, Shavers wrote: "My clients deal in cash only and I don't move a single coin until the cash is in hand and I'm out of harms [sic] way (just in case :) ). So risk is almost 0." On the same day, in a subsequent post on the Bitcoin Forum, Shavers wrote: "The prices for picking up coins from my clients selling coins is set prior to the purchases most of the time. Anything not covered is hedged or I take the risk personally."

16. On or about January 19, 2012, in a post on the Bitcoin Forum, Shavers wrote: "If my business is illegal then anyone trading coins for cash and back to coins is doing something illegal. :)"

17. On or about February 9, 2012, in a post on the Bitcoin Forum, Shavers announced that the required minimum to open a new BTCST account was being raised to 100 BTC.

18. On or about February 10, 2012, in response to a question by another participant on the Bitcoin Forum, Shavers wrote that BTCST investors could have their BTCST account set up to automatically reinvest rather than pay out earnings.

19. On or about February 12, 2012, in a post on the Bitcoin Forum, Shavers wrote that anyone wishing to open a new BTCST account needed a referral, although he did not indicate whether the referral had to be from an existing BTCST investor or someone else.

20. On or about April 10, 2012, Shavers launched a website for BTCST that allowed investors to track their BTCST investments online and changed the name from First Pirate Savings & Trust to BTCTS.

21. On or about May 21, 2012, in a post on the Bitcoin Forum, Shavers wrote that BTCST was not a Ponzi scheme. Later the same day, in response to the question by another Bitcoin Forum participant, "Would you be willing to disclose anything about your actual profit margins over the 7% weekly you pay for use of the funds?," Shavers wrote: "I ~~net~~ gross 10.65% per week and payout 5.98% on average and it really depends on how much I want to work."

22. In or about early July 2012, in a post on the Bitcoin Forum, Shavers wrote that, beginning August 1, 2012, interest payments on BTCST investments would be lowered to 3.9% weekly.

23. On or about July 23, 2012, in a post on the Bitcoin Forum, Shavers announced that he was eliminating the referral requirement to open a new BTCST account.

24. In August 2012, as the scheme collapsed, Shavers made preferential redemptions to friends and longtime BTCST investors.

25. During the relevant period, Shavers conducted BTCST business under the Internet name pirateat40 and all statements made on the Bitcoin Forum by pirateat40 were made by Shavers.

26. Shavers began selling BTCST investments at least as early as September 2011.

27. During the relevant period, directly or indirectly, Shavers sold BTCST investments over the Internet to at least 66 investors, including investors residing in Connecticut, Hawaii, Illinois, Louisiana, Massachusetts, North Carolina, and Pennsylvania.

28. Contrary to representations made to BTCST investors and potential investors, BTCST was a sham and a Ponzi scheme, and Shavers misappropriated BTCST investors' BTC, among other things, for his personal use.

29. At the time Shavers offered and sold the BTCST securities, Shavers knew, or was reckless in not knowing, that BTCST did not sell BTC to individuals who wanted to buy BTC off the radar, quickly or in large quantities; BTCST was not in the business of buying and selling BTC; and BTCST did not generate returns for its investors through such BTC market arbitrage.

30. At the time Shavers offered and sold the BTCST securities, Shavers knowingly or recklessly used new BTCST investor BTC to pay withdrawals and purported interest payments on outstanding BTCST investments; used BTCST investors' BTC for, among other things, his personal use; and made preferential redemptions to friends and longtime BTCST investors.

*Misappropriation of Investor Funds*

31. During the relevant period, Shavers obtained at least 700,467 BTC in principal investments from BTCST investors, or $4,592,806 when converted to U.S. dollars based on the daily average price of BTC when the BTCST investors purchased their BTCST investments.

32. During the relevant period, Shavers returned at least 507,148 BTC to BTCST investors as withdrawals or purported interest payments.

33. During the relevant period, Shavers transferred at least 150,649 BTC to his personal account at an online BTC currency exchange which, among other things, he then sold or used to day-trade (converting BTC to U.S. dollars and vice versa). As a result of this activity, Shavers suffered a net loss from his day-trading, but realized net proceeds of $164,758 from his net sales of 86,202 BTC.

34. During the relevant period, Shavers transferred $147,102 from his personal account at the online BTC currency exchange to accounts he controlled at an online payment processor and his personal checking account, which he then used for, among other things, his personal expenses, including rent, car-related expenses, utilities, retail purchases, casinos, and meals.

## FIRST CLAIM FOR RELIEF
### Violations of Section 17(a) of the Securities Act

35. The Commission re-alleges and incorporates paragraphs 1 through 34 by reference as if fully set forth herein.

36. Defendants, directly or indirectly, singly or in concert, in the offer and sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce, or by use of the mails, have (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material fact, or omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; and/or (c) engaged in transactions, practices, or courses of business which operate or would operate as a fraud or deceit upon the purchasers of securities.

37. By reason of the foregoing, Defendants, singly or in concert, directly or indirectly, have violated and, unless enjoined, will again violate Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF
### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder

38. The Commission re-alleges and incorporates paragraphs 1 through 34 by reference as if fully set forth herein.

39. Defendants directly or indirectly, singly or in concert, in connection with the purchase and sale of securities, by use of the means or instrumentalities of interstate commerce, or of the mails, or of the facilities of a national securities exchange, have: (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material fact, or omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; and/or (c) engaged in acts, practices, or courses of business which operate or would operate as a fraud or deceit upon other persons.

40. By reason of the foregoing, Defendants, singly or in concert, directly or indirectly, have violated and, unless enjoined, will again violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §240.10b-5].

## THIRD CLAIM FOR RELIEF
### Violations of Section 5(a) and 5(c) of the Securities Act

41. The Commission re-alleges and incorporates paragraphs 1 through 34 by reference as if fully set forth herein.

42. Defendants, directly or indirectly, singly or in concert, have made use of the means or instruments of transportation or communication in interstate commerce, or the mails, to offer and sell securities when no registration statements was filed or in effect as to such securities and when no exemption from registration was applicable.

43. By reason of the foregoing, Defendants have violated and, unless enjoined, will again violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c).]

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that the Court enter a Final Judgment:

(a) Finding that Defendants each violated the securities laws as alleged herein;

(b) Permanently restraining and enjoining Defendants, and their officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with them, who receive actual notice of the Final Judgment, by personal service or otherwise, and each of them, from violating Sections 5 and 17(a) of the Securities Act [15 U.S.C. §§ 77e and 77q(a)], and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

(c) Ordering Defendants to disgorge their ill-gotten gains received as a result of their violations of the federal securities laws and to pay pre-judgment interest thereon;

 (d) Ordering Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]; and

 (e) Granting such other and further relief to the Commission as this Court may deem just and proper.

Dated:  July 23, 2013  By: /s/ *Jessica B. Magee*
          JESSICA B. MAGEE
          Lead Attorney
          Texas Bar No. 24037757
          Matthew J. Gulde
          Illinois Bar No. 6272325
          SECURITIES AND EXCHANGE COMMISSION
          Burnett Plaza, Suite 1900
          801 Cherry Street, Unit 18
          Fort Worth, TX  76102
          (817) 978-6465
          (817) 978-4927 (fax)
          MageeJ@sec.gov

          ATTORNEYS FOR PLAINTIFF
          SECURITIES AND EXCHANGE COMMISSION

Of Counsel:

Andrew M. Calamari* (CalamariA@sec.gov)
Valerie A. Szczepanik* (SzczepanikV@sec.gov)
Philip Moustakis* (MoustakisP@sec.gov)
SECURITIES AND EXCHANGE COMMISSION
NEW YORK REGONAL OFFICE
3 World Financial Center
New York, NY 10281-1022
Ph:  (212) 336-0542

*not admitted in the E.D. Tex.