# EXHIBIT 4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

-- against --

TRENDON T. SHAVERS AND BITCOIN
SAVINGS AND TRUST,

Defendants.

CIVIL ACTION NO.

## DECLARATION OF DAPHNE P. DOWNES IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR AN ORDER TO SHOW CAUSE, ASSET FREEZE, AND OTHER ANCILLARY RELIEF

I, Daphne P. Downes, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am over eighteen years of age and am employed as a staff accountant in the Division of Enforcement in the New York Regional Office of the Securities and Exchange Commission ("Commission"). I have been employed by the Commission for more than twelve years. My current duties include assisting with the investigation of possible violations of the federal securities laws. On January 14, 2013, I was assigned to assist an ongoing investigation that resulted in the above-captioned action. I make this declaration in support of the Commission's Emergency Motion for an Order to Show Cause, Asset Freeze, and other Ancillary Relief against defendants Trendon T. Shavers ("Shavers") and Bitcoin Savings and Trust ("BTCST").

2.      I make this declaration based on my personal knowledge, information, and belief. The sources of my knowledge, information, and belief include documents obtained by Commission staff during the investigation and information provided to me by other Commission staff members assigned to the investigation. Because the Commission submits this declaration

for the limited purpose of supporting this emergency motion, I have not set forth each and every fact that I know about the investigation.

3.      In connection with the investigation, among other things, for the period from July 23, 2011 to September 5, 2012, I analyzed the amounts of Bitcoin ("BTC") Shavers obtained from BTCST investors and other sources, including BTC mining and sources not yet identified by Commission staff; the amounts of BTC Shavers paid to BTCST investors during the same period; uses to which Shavers put the BTC that he obtained from BTCST investors; and related information.

4.      A flowchart summarizing my analysis is attached to this declaration as Exhibit A.

5.      A month-by-month summary of my analysis is attached to this declaration as Exhibit B.

6.      I based my analysis on the following documents obtained by Commission staff during the investigation:

    a.  BTCST investor account data, for the period from April 1, 2012 to August 28, 2012, produced to Commission staff by Shavers.  A true and correct copy of the BTCST investor account data produced to Commission staff by Shavers is attached to this declaration as Exhibit C.

    b.  Shavers' BTC transaction data, for the period from July 23, 2011 to August 26, 2012, produced to Commission staff by Shavers.  A true and correct copy of the BTC transaction data produced to Commission staff by Shavers is attached to this declaration as Exhibit D.

c.  Woodforest National Bank ("Woodforest") records for Shavers'
    personal checking account, xxxxxx2815, for the period from March 6,
    2012 to October 10, 2012.  A true and correct copy of records obtained
    by Commission staff from Woodforest is attached to this declaration as
    Exhibit E.

d.  Dwolla Incorporated ("Dwolla") records for Shavers' personal Dwolla
    account, xxx-xxx-5107, for the period from January 12, 2012 to
    August 13, 2012, and a Dwolla account, xxx-xx-0245, opened by
    Shavers in the name of GPUMAX Technologies, LLC ("GPUMAX"),
    for the period from February 2, 2012 to August 13, 2012.  A true and
    correct copy of records obtained from Dwolla by Commission staff is
    attached to this declaration as Exhibit F.

e.  PayPal records for Shavers' personal PayPal account,
    xxxxxxxxxxxxxxx4267, for the period from May 1, 2011 to January
    15, 2013.  A true and correct copy of records obtained from PayPal by
    Commission staff is attached to this declaration as Exhibit G.

f.  Mt. Gox records for Shavers' personal Mt. Gox account, xxxxxxxx-
    xxxx-xxxx-xxxx-xxxxxxxxa239, for the period from July 27, 2011 to
    September 5, 2012.  A true and correct copy of account opening and
    administrative records for Shavers' personal Mt. Gox account,
    produced to Commission staff by Mt. Gox, is attached as Exhibit H.  It
    is impractical to e-file an electronic version of the transactional data
    relating to Shavers' Mt. Gox account due to its volume.  Commission

staff will produce a hard copy of this data to Shavers upon his request.

If the Court would like a copy of this data, Commission staff will

provide a hard copy to the Court.

7.     A true and correct copy of a document produced to Commission staff by Shavers

indicating that Shavers deleted all BTCST account data for "closed accounts" is attached to this

declaration as Exhibit I.

8.     Based on my analysis of the BTCST investor account data and Shavers' BTC

transaction data, Shavers began receiving BTC from BTCST account holders at least as early as

September 19, 2011.

9.     Shavers produced BTCST investor account data to Commission staff for 46

BTCST investor accounts.  The data indicates that Shavers transferred BTC from at least twenty

other BTCST investor accounts into the 46 accounts for which he provided data.

10.     During the period covered by my analysis, Shavers:

    a.  Obtained at least 700,467 BTC in principal investments from BTCST

       investors, or $4,592,806, when converted to U.S. dollars based on the

       daily average price of BTC when the BTCST investors purchased their

       BTCST investments;

    b.  Returned at least 507,148 BTC to BTCST investors in withdrawals or

       purported interest payments;

    c.  Transferred at least 150,649 BTC to his Mt. Gox account which,

       among other things, he then sold or used to day-trade (converting BTC

       to U.S. dollars and vice versa).  As a result of this activity, Shavers

suffered a net loss from his day-trading, but realized net proceeds of $164,758 from his net sales of 86,202 BTC; and

d.   Transferred a combined $147,102 from his Mt. Gox account to his personal checking account, his personal Dwolla account, and the GPUMAX account at Dwolla, which (together with other funds in those accounts) he then used for personal expenses, including rent, car-related expenses, utilities, retail purchases, casinos, and meals; transferred directly to individuals associated with GPUMAX; and transferred to a GPUMAX account at Northstar Bank of Texas.

*See* Ex. A.

11.   Based on my analysis, sources of 173,256 BTC obtained, and recipients of 303,841 BTC transferred, by Shavers remain unidentified by Commission staff. *See id.*

12.   Based on information provided to me by other Commission staff, Shavers claimed to generate BTCST investor returns (a) by lending BTCST investor BTC to anonymous borrowers who paid him at least 10% interest weekly on the BTC he lent to them and returned the principal on a weekly basis; (b) by lending BTC to another borrower who paid him up to 4% interest daily; and (c) through other investing activities which yielded greater than 10% returns per week.

13.   Based on my analysis, these claims are not supported in the documents obtained by Commission staff.  The identified sources of BTC obtained by Shavers do not include such borrowers and the amounts of BTC received by Shavers from unidentified sources are insufficient to account for his claims.  The amounts of BTC Shavers received from unidentified sources, at all periods covered by my analysis, fall far short of the amounts necessary to support

the principal or interest payments Shavers claimed to be receiving from anonymous borrowers, or the rates of return Shavers otherwise claimed to be earning.

14.     Although sources of some BTC obtained by Shavers and recipients of some BTC transferred by Shavers remain unidentified by Commission staff, on a month-by-month basis, from March 2012 through August 2012, payments to BTCST investors exceeded the amount of BTC Shavers received from sources other than BTCST investors themselves, indicating that Shavers was using new BTCST investor BTC to make payments on outstanding BTCST investments. *See* Ex. B.

15.     Based on my analysis, the BTCST investors who suffered net losses (there also were net winners who received more in withdrawals and purported interest payments than they invested in principal) collectively lost 263,024 BTC in principal to BTCST, that is, $1,834,303, based on the daily average price of BTC when they purchased their BTCST investments, or in excess of $23 million, based on BTC exchange rates available on the date of this declaration.

Pursuant to 28 U.S.C. § 1746, I, Daphne P. Downes, declare under penalty of perjury that the foregoing is true and correct.

Executed on: 7/19/13
New York, New York

_____
Daphne P. Downes