# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION § § § | |
| V. § | CASE NO. 4:13-CV-416 |
| § | |
| TRENDON T. SHAVERS and BITCOIN SAVINGS AND TRUST § § | |

## MEMORANDUM OPINION REGARDING THE COURT'S SUBJECT MATTER JURISDICTION

The question currently before the Court is whether or not it has subject matter jurisdiction over this action pursuant to Sections 20 and 22 of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. §§ 77t and 77v] and Sections 21 and 27 of the Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. §§ 78u and 78aa]. On August 5, 2013, the Court conducted a hearing at which Defendant, Trendon T. Shavers ("Shavers"), challenged the Court's subject matter jurisdiction over this case.

Shavers is an individual residing in McKinney, Texas, and is the founder and operator of Bitcoin Savings and Trust ("BTCST"), formerly known as First Pirate Savings & Trust. According to the facts stated by the SEC,[1] Shavers made a number of solicitations aimed at enticing lenders to invest in Bitcoin-related investment opportunities.

Bitcoin is an electronic form of currency unbacked by any real asset and without specie, such as coin or precious metal. Derek A. Dion, *I'll Glady Trade You Two Bits on Tuesday for a Byte Today: Bitcoin, Regulating Fraud in the E-Conomy of Hacker-Cash*, 2013 U. Ill. J.L. Tech & Pol'y 165, 167 (2013). "It is not regulated by a central bank or any other form of governmental authority; instead, the supply of Bitcoins is based on an algorithm which structures

---

[1] These facts were not challenged at the hearing on August 5, 2013.

a decentralized peer-to-peer transaction system." *Id*. Bitcoin was designed to reduce transaction costs, and allows users to work together to validate transactions by creating a public record of the chain of custody of each Bitcoin. *Id*. Bitcoin can be used to purchase items online, and some retail establishments have begun accepting Bitcoin in exchange for gift cards or other purchases. The value of Bitcoin is volatile and ranges from less than $2 per Bitcoin to more than $260 per Bitcoin (Dkt. #3 at 1).

Beginning in November of 2011, Shavers began advertising that he was in the business of "selling Bitcoin to a group of local people" and offered investors up to 1% interest daily "until either you withdraw the funds or my local dealings dry up and I can no longer be profitable" (Dkt. #3 at 3). During the relevant period, Shavers obtained at least 700,467 Bitcoin in principal investments from BTCST investors, or $4,592,806 in U.S. dollars, based on the daily average price of Bitcoin when the BTCST investors purchased their BTCST investments (Dkt. #3 at 4). The BTCST investors who suffered net losses (compared to investors who received more in withdrawals and purported interest payments than they invested in principal), collectively lost 263,104 Bitcoin in principal, that is $1,834,303 based on the daily average price of Bitcoin when they purchased their BTCST investments, or in excess of $23 million based on currently available Bitcoin exchange rates. *Id*.

The SEC asserts that Shavers made a number of misrepresentations to investors regarding the nature of the investments and that he defrauded investors. However, the question currently before the Court is whether the BTCST investments in this case are securities as defined by Federal Securities Laws. Shavers argues that the BTCST investments are not securities because Bitcoin is not money, and is not part of anything regulated by the United States. Shavers also contends that his transactions were all Bitcoin transactions and that no money ever exchanged

hands. The SEC argues that the BTCST investments are both investment contracts and notes, and, thus, are securities.

The term "security" is defined as "any note, stock, treasury stock, security future, security-based swap, bond…[or] investment contract…" 15 U.S.C. § 77b. An investment contract is any contract, transaction, or scheme involving (1) an investment of money, (2) in a common enterprise, (3) with the expectation that profits will be derived from the efforts of the promoter or a third party. *SEC v. W.J. Howey & Co.*, 328 U.S. 293, 298-99 (1946); *Long v. Shultz Cattle Co*, 881 F.2d 129, 132 (1989). First, the Court must determine whether the BTCST investments constitute an investment of money. It is clear that Bitcoin can be used as money. It can be used to purchase goods or services, and as Shavers stated, used to pay for individual living expenses. The only limitation of Bitcoin is that it is limited to those places that accept it as currency. However, it can also be exchanged for conventional currencies, such as the U.S. dollar, Euro, Yen, and Yuan. Therefore, Bitcoin is a currency or form of money, and investors wishing to invest in BTCST provided an investment of money.

Next, the Court looks at whether there is a common enterprise. To show a common enterprise, the Fifth Circuit requires interdependence between the investors and the promotor, which "may be demonstrated by the investors' collective reliance on the promotor's expertise even where the promotor receives only a flat fee or commission rather than a share in the profits of the venture." *Long*, 881 F.2d at 141. That interdependence is established in this case because the investors here were dependent on Shavers' expertise in Bitcoin markets and his local connections. In addition, Shavers allegedly promised a substantial return on their investments as a result of his trading and exchanging Bitcoin. Therefore, the Court finds that there is a common enterprise.

Finally, the Court considers whether there is an expectation that profits will be derived from the efforts of the promotor or third party. The Court finds that this prong is also met. At the outset, Shavers allegedly promised up to 1% interest daily, and at some point during the relevant period the interest promised was at 3.9%. Clearly any investors participating in the BTCST investments were expecting profits from the efforts of Shavers.

## CONCLUSION

Therefore, the Court finds that the BTCST investments meet the definition of investment contract, and as such, are securities.[2] For these reasons, the Court finds that it has subject matter jurisdiction over this matter, pursuant to Sections 20 and 22 of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. §§ 77t and 77v] and Sections 21 and 27 of the Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. §§ 78u and 78aa].

**SIGNED this 6th day of August, 2013.**

_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE

---

[2] Having found that the BTCST investments are "investment contracts" and, thus, securities, the Court will not consider whether the BTCST investments are also "notes."