# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | CIVIL ACTION NO. |
| -- against -- | 4:13-CV-416 (RC) (ALM) |
| TRENDON T. SHAVERS AND BITCOIN SAVINGS AND TRUST, | |
| Defendants. | |

## DECLARATION OF DAPHNE P. DOWNES IN SUPPORT OF PLAINTIFF'S <u>MOTION FOR SUMMARY JUDGMENT</u>

I, Daphne P. Downes, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am over eighteen years of age and am employed as a staff accountant in the Division of Enforcement in the New York Regional Office of the Securities and Exchange Commission ("Commission").  I have been employed by the Commission for more than twelve years.  My current duties include assisting with the investigation of violations of the federal securities laws.  On January 14, 2013, I was assigned to assist an ongoing investigation that resulted in the above-captioned action and I have assisted on that investigation and this action since that date.  I make this declaration in support of the Commission's Motion for Summary Judgment against defendants Trendon T. Shavers ("Shavers") and Bitcoin Savings and Trust ("BTCST").

2.      I make this declaration based on my personal knowledge, information, and belief.  The sources of my knowledge, information, and belief include documents obtained by Commission staff during the investigation and litigation of this action.  Because the Commission

submits this declaration for the limited purpose of supporting this motion, I have not set forth each and every fact that I know about this matter.

3.      Upon information and belief, Bitcoin, commonly abbreviated "BTC," is a decentralized digital currency that may be used to purchase goods and services online, or traded on online exchanges for conventional currencies, including the U.S. dollar.  Relevant to this action, one such online exchange was Mt. Gox, headquartered in Tokyo, Japan.  Bitcoin was created by the pseudonymous developer (or developers) Satoshi Nakamoto; it has no single administrator, or central authority or repository.  Since its introduction in 2009, bitcoin's value has been volatile, ranging from less than $2 per bitcoin to more than $1,200 per bitcoin. Currently, there are more than 12.2 million bitcoins in circulation.

4.      Upon information and belief, bitcoins are held at, and sent to and from, bitcoin "addresses."  A bitcoin "wallet" is a software file that holds bitcoin addresses.  Along with each bitcoin address, a bitcoin wallet stores the "private key" for the address, essentially a password used by the holder to access the bitcoins held at the address.

5.      Upon information and belief, all bitcoin transactions are recorded in a publicly available ledger called the "blockchain."  The blockchain records each transaction by amount(s), the bitcoin addresses involved in the transaction, and transaction date(s) and time(s).

6.      In connection with the investigation and the litigation of this action, among other things, for the period from July 23, 2011 to September 5, 2012, I analyzed the amounts of bitcoins Shavers obtained from BTCST investors and other sources; the amounts of bitcoins Shavers paid to BTCST investors during the same period; uses to which Shavers put the bitcoins that he obtained from BTCST investors; and related information.

7.      A flowchart summarizing my analysis is attached to this declaration as Exhibit A.

8.    A month-by-month summary of my analysis is attached to this declaration as Exhibit B.

9.    I based my analysis, among other things, on:[1]

    (a) BTCST investor account data, for the period from April 1, 2012 to August 28, 2012, produced to Commission staff by Shavers;

    (b) Transaction data for Shavers' "main operating wallet" for BTCST, for the period from July 23, 2011 to August 26, 2012, produced to Commission staff by Shavers;

    (c) BTCST investor account information and transaction data obtained by Commission staff from sources other than Shavers, including BTCST investors;

    (d) Woodforest National Bank ("Woodforest") records for Shavers' personal checking account, xxxxxx2815, for the period from March 6, 2012 to October 10, 2012;

    (e) Dwolla Incorporated ("Dwolla") records for Shavers' personal Dwolla account, xxx-xxx-5107, for the period from January 12, 2012 to August 13, 2012, and a Dwolla account, xxx-xx-0245,

_____

[1] True and correct copies of items (a), (b), (d) through (f), and, in part, (g) were filed with the Court in the Appendix in Support of Plaintiff's Emergency Motion for an Order to Show Cause, Asset Freeze, and other Ancillary Relief [Docket No. 4]. The remaining items have been produced or made available to Shavers. As this declaration is a summary analysis of data and information derived from all of these materials, and it is not necessary for these purposes to reference any of them by specific line item or page, the Commission is not submitting them as part of its Appendix in Support of Plaintiff's Motion for Summary Judgment so as to not overburden the Court. However, if the Court would like a courtesy copy of some or all of these materials, Commission staff will promptly provide a copy to the Court.

opened by Shavers in the name of GPUMAX Technologies,

LLC ("GPUMAX"), for the period from February 2, 2012 to

August 13, 2012;

   (f)  PayPal records for Shavers' personal PayPal account,

xxxxxxxxxxxxxx4267, for the period from May 1, 2011 to

January 15, 2013;

   (g)  Mt. Gox records for Shavers' personal Mt. Gox account,

xxxxxxxx-xxxx-xxxx-xxxx-xxxxxxxxa239, for the period from

July 27, 2011 to September 5, 2012; and

   (h)  GPUMAX transaction data for the period January 21, 2012 to

October 13, 2012.

10.    Based on my analysis, Shavers sold BTCST investments, directly or indirectly, to at least eighty investors.

11.    Based on my analysis, Shavers began receiving bitcoins from BTCST account holders at least as early as September 19, 2011.

12.    During the period covered by my analysis, Shavers:

   (a)  Obtained at least 732,050 bitcoins in principal investments

from BTCST investors, or $4,777,403, when converted to U.S.

dollars based on the daily average price of bitcoin when the

BTCST investors purchased their BTCST investments;

   (b)  Returned at least 551,231 bitcoins to BTCST investors in

withdrawals or purported interest payments;

(c) Transferred at least 150,649 bitcoins to his personal Mt. Gox

account which, among other things, he then sold or used to

day-trade (converting bitcoins to U.S. dollars and vice versa).

As a result of this activity, Shavers suffered a net loss from his

day-trading, but realized net proceeds of $164,758 from his net

sales of 86,202 bitcoins; and

(d) Transferred a combined $147,102 from his personal Mt. Gox

account to his personal checking account, his personal Dwolla

account, and the GPUMAX account at Dwolla, which (together

with other funds in those accounts) he then used, among other

things, for personal expenses, including rent, car-related

expenses, utilities, retail purchases, visits to casinos, and meals.

*See* Ex. A.

13.    Based on my analysis, sources of 117,448 bitcoins obtained, and recipients of

201,158 bitcoins transferred, by Shavers remain unidentified by Commission staff. *See id.*

14.    At his deposition in this action, Shavers claimed:  (a) he pooled BTCST investors'

bitcoins together with his own bitcoins for the purpose of investing; (b) over 90% of the

investment activity he undertook for BTCST involved lending bitcoins to others he met online

(with Shavers making loans, and the borrowers returning principal and interest, on a weekly

basis); and (c) BTCST came to an end in August 2012 because, in the second week of July 2012,

Shavers made an unsecured loan of 202,000 bitcoins to BTCST's largest borrower, who

promptly absconded with the funds. [Transcript of Deposition of Trendon T. Shavers, dated

Sept. 5, 2013 ("Shavers Dep."), pp. 46-48, 115-18, 227, 235-37 248, 274-75 (App. 18, 35-36, 63,

65-66, 68, 75).] Furthermore, Shavers represented to BTCST investors that he earned 10.65% weekly on average from the investment activities he undertook for BTCST. [Id., p. 100 (App. 31); id., at Ex. 4, p. 11(App. 127).]

15.     These claims, taken together, are not possible based on my analysis of the record evidence in this action: First, the identified sources of bitcoins obtained by Shavers do not include such borrowers; second, the amounts of bitcoins received by Shavers from unidentified sources, at all periods covered by my analysis, fall far short of the amounts necessary to support the principal or interest payments Shavers claimed to be receiving from BTCST's borrowers, or the rates of return Shavers otherwise claimed to be earning for BTCST investors; and, third, Shavers did not have sufficient bitcoins in July 2012 to make a 202,000 bitcoin loan.

16.     At his deposition in this action, Shavers claimed further that, as of October 3, 2013, he was still in possession of 100,000 bitcoins that he subsequently returned to BTCST investors via their last known withdrawal addresses. [Id., pp. 259-62 (App. 71-72).] This claim is supported neither by my analysis of the record evidence in this action nor by my analysis of the blockchain.

17.     Although sources of some bitcoins obtained by Shavers and recipients of some bitcoins transferred by Shavers remain unidentified by Commission staff, on a month-by-month basis, from February 2012 through August 2012, bitcoin payments to BTCST investors exceeded the amount of bitcoins Shavers received from sources other than BTCST investors themselves, indicating that Shavers was using new bitcoins received from BTCST investors to make payments on outstanding BTCST investments. *See* Ex. B.

18.     Based on my analysis, Shavers obtained a net 180,819 bitcoins from his fraud (total bitcoins received from BTCST investors less bitcoins returned to them), that is:  (a)

$1,380,752 based on an average daily price of bitcoin when Shavers sold the BTCST investments; (b) $38,638,569 based on an average daily price of bitcoin from August 26, 2012 (the date of the last transfer by Shavers to a BTCST investor) to close of business March 2, 2014; or (c) more than $101 million at exchange rates available on the date of this declaration.

19.     The BTCST investors who suffered net losses (there also were net winners who received more in withdrawals and purported interest payments than they invested in principal) collectively lost 265,678 bitcoins in principal to BTCST, or more than $149 million at exchange rates available on the date of this declaration

Pursuant to 28 U.S.C. § 1746, I, Daphne P. Downes, declare under penalty of perjury that the foregoing is true and correct.

Executed on: 3/3/14
New York, New York

_____
Daphne P. Downes

# EXHIBIT A



EXPENSES & DISTRIBUTIONS

BTCST INVESTOR ACCOUNTS
(9/19/11 - 8/23/12)

732,050 BTC
180,819 (NET)
551,231 BTC

TRENDON T. SHAVERS & BITCOIN SAVINGS AND TRUST TRANSACTIONS

"MAIN OPERATING WALLET"

(7/23/11 - 8/26/12)

Mined BTC
(9/12/11 - 8/24/12)
23,469 BTC

40,143 BTC
1,062 BTC

GPUMAX Technologies LLC
(1/21/12 - 10/13/12)

Other
$64,965

Other
$84,200

SHAVERS' PAYPAL ACCOUNT
(7/27/11 -1/15/13)

$96,164
(Note: Distributions exceed deposits because some deposits were made before 7/27/11)

SHAVERS' CHECKING ACCOUNT
Woodforest Nat'l Bank
(3/6/12 - 10/10/12)

$14,279

Debit Card Retail Purchases          77,643
*(Primarily large purchases at Kroger and Walmart, Enterprise Car Rental, restaurants, movies, auto merchandise, day spas, and various retail stores)*

Payments to GPUMAX Associate      2,301
Payments to Others                       14,441
ATM & Other Withdrawals                1,346
Miscellaneous                                  433
                                                    $ 96,164

117,448 BTC
201,158 BTC

150,649 BTC

69,153 BTC

$10,000

$72,772

$9,775

$153,502

Unidentified Sources or Recipients

23,164 BTC
15,006 BTC

SHAVERS' MT. GOX ACCOUNT
(7/27/11 - 9/5/12)

$132,289

SHAVERS' DWOLLA ACCOUNT
(1/12/12 - 8/13/12)

$7,855

SHAVERS' PRE-PAID CREDIT CARD AccountNow

| | |
|---|---:|
| Checks/M.O.s - Payee Unknown | 30,300 |
| Autos & Related Expenses | 25,913 |
| Casino | 14,773 |
| Restaurants | 11,229 |
| Groceries/Gas | 11,152 |
| Payments to Individuals | 21,000 |
| Rent for Residence | 7,804 |
| Retail Purchases | 5,264 |
| ATM Withdrawals | 4,918 |
| Entertainment/Games | 4,510 |
| Phone/Internet/TV | 3,237 |
| Travel | 2,961 |
| Utilities | 2,076 |
| Credit Card Payments | 1,010 |
| Motion Resources LLC | 824 |
| Misc./Other | 6,531 |
| | $ 153,502 |

$17,656
(528,010 sent net of $10,354 received)

3,451 BTC
(3,751 sent net of 300 received)

Unidentified Mt. Gox Accounts

86,202 Net BTC Sold
(875,425 sells less 789,223 net buys after 2,102 in fees)

$164,758 Proceeds
($6,083,245 sells: $5,902,425 buys: $16,062 sell fees)

$6,934

Other
$8,000

$4,813

TRADING ACTIVITY
$USD P&L (Avg. Price Basis)
Proceeds on Deposited BTC Sold: $599,009
Net Trading Losses: $434,251
Net Proceeds = $164,758

GPUMAX DWOLLA ACCOUNT
(2/2/12 - 8/13/12)

$12,813

GPUMAX BANK ACCOUNT
Northstar Bank

$53,597

| | |
|---|---:|
| Payments to Individuals | 31,220 |
| Payments to GPUMAX Associates | 17,364 |
| Payment to Car Dealership | 5,000 |
| Fees/Misc | 14 |
| | $ 53,597 |

Legend:   BTC   $USD

# EXHIBIT B

## TRENDON T. SHAVERS & BITCOIN SAVINGS AND TRUST BITCOIN TRANSACTIONS

### Month-By-Month Analysis
(All Figures in Bitcoin)

| MONTH/YEAR | BITCOIN RECEIVED | | | | | | BITCOIN SENT | | | | | CUMULATIVE BALANCE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Investors | Mt. Gox | GPUMAX | Mined | Unidentified Sources | Total - All Sources | Investors | Mt. Gox | GPUMAX | Unidentified Recipients | Total - All Recipients | |
| July 2011 | | | | | 0 | 0 | | | | 0 | 0 | 0 |
| August 2011 | | | | | 180 | 180 | | -17 | | -147 | -164 | 16 |
| September 2011 | 560 | 30 | | 2 | 569 | 1,160 | -29 | -430 | | -699 | -1,158 | 19 |
| October 2011 | 325 | 61 | | 0 | 546 | 932 | -28 | | | -923 | -951 | 0 |
| November 2011 | 3,290 | 56 | | | 1,553 | 4,899 | -560 | -400 | | -3,937 | -4,897 | 2 |
| December 2011 | 8,362 | | | 0 | 4,044 | 12,406 | -2,223 | -800 | -1 | -7,227 | -10,251 | 2,156 |
| January 2012 | 18,815 | 262 | 3 | 2 | 7,974 | 27,057 | -5,979 | -10,878 | -328 | -10,252 | -27,436 | 1,777 |
| February 2012 | 34,985 | | 589 | 4 | 6,831 | 42,409 | -10,078 | -20,621 | -4,809 | -8,327 | -43,835 | 351 |
| March 2012 | 37,679 | 2,397 | 57 | 0 | 7,796 | 47,930 | -23,360 | -9,500 | -1,077 | -12,295 | -46,231 | 2,049 |
| April 2012 | 60,021 | 5,797 | 45 | 2,185 | 7,536 | 75,584 | -37,881 | -17,600 | -906 | -20,522 | -76,910 | 723 |
| May 2012 | 139,109 | 6,585 | 32 | 10,260 | 22,201 | 178,187 | -104,224 | -26,503 | -15,297 | -21,828 | -167,852 | 11,058 |
| June 2012 | 160,059 | | 198 | 4,750 | 20,677 | 185,683 | -104,542 | -13,000 | -8,208 | -49,615 | -175,366 | 21,376 |
| July 2012 | 188,931 | 24,000 | 122 | 3,088 | 34,272 | 250,413 | -173,813 | -40,000 | -4,620 | -47,845 | -266,277 | 5,511 |
| August 2012 | 79,915 | 29,964 | 15 | 3,177 | 3,270 | 116,342 | -88,514 | -10,900 | -4,898 | -17,542 | -121,853 | 0 |
| Grand Total | 732,050 | 69,153 | 1,062 | 23,469 | 117,448 | 943,181 | -551,231 | -150,649 | -40,143 | -201,158 | -943,181 | 0 |

# EXHIBIT 6



**SUBPOENA**

# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION

**Bitcoin Securities Offerings (NY-8834)**

**TO:**   Trendon T. Shavers          Trendon T. Shavers          Trendon T. Shavers
1701 North Clay Street     2305 South Custer Road     me@pirateat40.com
Ennis, TX 75119-2344      Apt. 1507
McKinney, TX 75070-6222

☑   **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission, at the place, date and time specified below.

**3 World Financial Center, 4ᵗʰ Floor, New York, NY 10281, on September 28, 2012**

☐   **YOU MUST TESTIFY** before officers of the Securities and Exchange Commission, at the place, date and time specified below.

**FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.**
Failure to comply may subject you to a fine and/or imprisonment.

By: _Philip Moustakis_ _____          Date: _Sept. 21, 2012_

Philip Moustakis
Senior Attorney
(212) 336-0542

I am an officer of the Securities and Exchange Commission authorized to issue subpoenas in this matter. The Securities and Exchange Commission has issued a formal order authorizing this investigation under Section 20(a) of the Securities Act of 1933 and Section 21(a) of the Securities Exchange Act of 1934.

NOTICE TO WITNESS:     If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

## SUBPOENA ATTACHMENT

A. **Definitions & Instructions**

1. "Bitcoin Savings & Trust," means Bitcoin Savings & Trust, Bitcoin Savings and Trust, BTCST, First Pirate Savings & Trust, First Pirate Savings and Trust, and any parent, subsidiary, or affiliate, or special purpose entity, variable interest entity, off-balance sheet entity, predecessor, successor, general partner, limited partner, or partnership of any of the foregoing, wherever located worldwide.

2. "GPUMAX Technologies, LLC means GPUMAX Technologies, LLC and any parent, subsidiary, or affiliate, or special purpose entity, variable interest entity, off-balance sheet entity, predecessor, successor, general partner, limited partner, or partnership of any of the foregoing, wherever located worldwide.

3. "Business Cognition" means Business Cognition and any parent, subsidiary, or affiliate, or special purpose entity, variable interest entity, off-balance sheet entity, predecessor, successor, general partner, limited partner, or partnership of any of the foregoing, wherever located worldwide.

4. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) stored in any medium from which information can be obtained either directly or, if necessary, after translation into a reasonably usable form.

5. The term "document" means all documents or electronically stored information including, without limitation, writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations, stored in any medium from which information can be obtained either directly or, if necessary, after translation into a reasonably usable form.

6. The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

7. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this subpoena all responses that might otherwise be construed to be outside of its scope.

8. The terms "all," "any" and "each" shall be construed as encompassing any and all.

9. If any document or communication is withheld from production due to an assertion of the attorney-client privilege, or any other privilege or protection against production, identify each such document or communication in a manner sufficient to permit the Commission to evaluate the claimed privilege or protection. At a minimum identify the type of document or communication, its general subject matter, its date, its author(s), its addressee(s), its recipient(s), and the privilege or protection claimed.

10. If any document or communication sought by this subpoena once was, but no longer is, within your possession, custody, or control, identify each such document or communication and its present or last known custodian, state the reason why it is not being produced, and the date of its loss, destruction, discard, theft or other disposal.

11. The time period covered by this subpoena is May 1, 2011 to the present.

**B. Documents Subpoenaed**

1. All documents and communications concerning Bitcoin Savings & Trust.

2. All documents and communications concerning GPUMAX Technologies, LLC.

3. All documents and communications concerning Business Cognition.

4. Documents sufficient to identify all bank or brokerage accounts held in your name or for your benefit, or which you control or controlled, in whole or in part, and identifying the name and address of the bank or brokerage firm, and the account name and number. (In lieu of documents you may provide a chart to satisfy this item.)

5. Monthly or quarterly account statements for all accounts identified in response to Item 4, above.

6. Documents sufficient to identify all Bitcoins owned by you or for your benefit, or which you control or controlled, in whole or in part. (In lieu of documents you may provide a chart to satisfy this item.)

7. Documents sufficient to identify the name, address, the legal status, and tax identification number, if any, of all partnerships, joint ventures, funds, or other business enterprises entered into or invested in by you. (In lieu of documents you may provide a chart to satisfy this item.)

3

# EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

-- against –

TRENDON T. SHAVERS AND BITCOIN
SAVINGS AND TRUST,

Defendants.

CIVIL ACTION NO.
4:13-CV-416 (RC) (ALM)

## PLAINTIFF'S FIRST REQUEST TO DEFENDANTS
## FOR PRODUCTION OF DOCUMENTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, plaintiff Securities and

Exchange Commission ("Commission") requests that defendants Trendon T. Shavers ("Shavers")

and Bitcoin Savings and Trust ("BTCST" and, together with Shavers, "Defendants") produce to

the undersigned Commission staff the documents and communications called for by this request

for production ("Request") within 30 days of the date of service hereof.

### DEFINITIONS AND INSTRUCTIONS

1.     "BTCST" means Bitcoin Savings and Trust, First Pirate Savings & Trust, and any

parent, subsidiary, or affiliate, or special purpose entity, variable interest entity, off-balance sheet

entity, predecessor, successor, general partner, limited partner, or partnership of any of the

foregoing, wherever located worldwide.

2.     "GPUMAX" means GPUMAX technologies, LLC, and any parent, subsidiary, or

affiliate, or special purpose entity, variable interest entity, off-balance sheet entity, predecessor,

successor, general partner, limited partner, or partnership of any of the foregoing, wherever located worldwide.

　　　3.　　　The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) stored in any medium from which information can be obtained either directly or, if necessary, after translation into a reasonably usable form.

　　　4.　　　The term "document" means all documents or electronically stored information including, without limitation, writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations, stored in any medium from which information can be obtained either directly or, if necessary, after translation into a reasonably usable form.

　　　5.　　　The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

　　　6.　　　The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this Request all responses that might otherwise be construed to be outside of its scope.

　　　7.　　　The terms "all," "any" and "each" shall be construed as encompassing any and all.

　　　8.　　　If any document or communication is withheld from production due to an assertion of the attorney-client privilege, or any other privilege or protection against production, identify each such document or communication in a manner sufficient to permit the Commission to evaluate the claimed privilege or protection. At a minimum identify the type of document or communication, its general subject matter, its date, its author(s), its addressee(s), its recipient(s), and the privilege or protection claimed.

　　　9.　　　If any document or communication sought by this Request once was, but no longer is, within your possession, custody, or control, identify each such document or communication and

2

its present or last known custodian, state the reason why it is not being produced, and the date of its loss, destruction, discard, theft or other disposal.

      10.    The time period covered by this Request is May 1, 2011 to the present.

**DOCUMENTS TO BE PRODUCED**

      1.    All documents and communications concerning BTCST, including, without limitation, all communications with investors or potential investors in BTCST.

      2.    All documents and communications concerning GPUMAX.

      3.    A full and complete digital copy of BTCST's website, btcst.com, as of the following dates:  (a) April 30, 2012; (b) May 31, 2012; (c) June 30, 2012; (d) July 31, 2012; and (e) August 31, 2012.

      4.    All filed federal and state income tax returns, including all schedules and attachments for Shavers.

      5.    All filed federal and state income tax returns, including all schedules and attachments for BTCST.

      6.    For each position of employment, your two most recent paystubs.

      7.    Documents sufficient to identify all Bitcoins owned by you or for your benefit, or which you control or controlled, in whole or in part.

      8.    Documents sufficient to identify all bank or brokerage accounts, or accounts at other financial intermediaries (whether transacting business in Bitcoin, U.S. dollars, or other currencies), including without limitation payment processors or currency exchanges, held in your name or for your benefit, or which you control or controlled, in whole or in part.

      9.    All account opening documents, and monthly or quarterly statements, for all accounts identified in connection with item 8.

3

10.    Documents sufficient to identify the name, address, the legal status, and tax

identification number, if any, of all partnerships, joint ventures, funds, or other business enterprises

entered into or invested in by you.

Dated: October 9, 2013
        New York, NY

By:    */s/ Philip Moustakis*
       PHILIP MOUSTAKIS (PM-1748)
       Attorney for Plaintiff
       SECURITIES AND EXCHANGE COMMISSION
       NEW YORK REGIONAL OFFICE
       Brookfield Place
       200 Vesey Street, Ste. 400
       New York, NY 10281-1022
       (212) 336-0542
       MoustakisP@sec.gov
       *Admitted Pro Hac Vice*

4

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 9th day of October, 2013, I served the foregoing Request for

Production of Documents, by UPS Overnight Delivery, and by email, on:

TRENDON T. SHAVERS
2305 South Custer Road, Apt. 1507
McKinney, TX 75070
*tredon@buscog.com*

BITCOIN SAVINGS AND TRUST
c/o Trendon T. Shavers
2305 South Custer Road, Apt. 1507
McKinney, TX 75070
*trendon@buscog.com*

*/s/ Philip Moustakis*
PHILIP MOUSTAKIS (PM-1748)
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
NEW YORK REGIONAL OFFICE
Brookfield Place
200 Vesey Street, Ste. 400
New York, NY 10281-1022
(212) 336-0542
MoustakisP@sec.gov
*Admitted Pro Hac Vice*

# EXHIBIT 8



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
New York Regional Office
3 World Financial Center, Suite 400
New York, NY  10281-1022

DIVISION OF
ENFORCEMENT

PHILIP R. MOUSTAKIS
SENIOR ATTORNEY
(212) 336-0542
moustakisp@sec.gov

November 7, 2013

**By UPS Overnight Delivery and Electronic Mail:**

Trendon T. Shavers
2305 South Custer Road, Apt. 1507
McKinney, TX 75070-6222
trendon@buscog.com

> Re:  *SEC v. Shavers, et al.*, 4:13-CV-416 (RC) (ALM)

Dear Mr. Shavers:

I represent the Securities and Exchange Commission ("Commission") in the above-referenced action.  I write to remind you of certain past-due obligations on your part, as well as upcoming deadlines.

## I.    PAST-DUE OBLIGATIONS

### A.  Verified Accounting

The Court's August 5, 2013 Order Freezing Assets and Granting other Ancillary Relief ("August 5, 2013 Order") required you to file with the Court and serve upon the Commission a verified accounting of your assets, liabilities, and income, by August 12, 2013, which you failed to do.  On August 29, 2013, the Court ordered you to provide your accounting to the Commission by no later than August 20, 2013, which, again, you failed to do.  To date, the Commission has not received an accounting from you.  Copies of the August 5, 2013 Order and the August 29, 2013 Order are enclosed for your reference.

As we have discussed repeatedly, including during our August 21, 2013 telephone conference, held pursuant to Rule 26(f) of the Federal Rules of Civil Procedure ("Rule 26"), you are required to provide an accounting to the Commission, signed by you, under penalty of perjury, detailing, among other things, the following:

> (1) All assets and liabilities currently held by you, describing the amount and
>     current location of each of the items listed, including the names of
>     financial institutions, identifying account names or numbers, Bitcoin

addresses, or other information sufficient to verify the nature, location, custody, or amount of such assets;

(2) All assets or income received by you, at any time from August 1, 2011 to the date of the accounting, describing the source, amount, disposition, and current location of each of the items listed; and

(3) All assets or income transferred by you to any individual, or entity, at any time from August 1, 2011 to the date of the accounting, describing the transferee/destination and amount of each item listed.

Please note, by the express terms of the August 5, 2013 Order, for purposes of your accounting and the repatriation order, discussed below, the term "assets" shall include "all money, funds, Bitcoin, other virtual currencies; real or personal property; securities or commodities; choses in action; business interests; or anything else of value." I refer you to Section II of the August 5, 2013 Order for the exact requirements for your accounting.

### B. Repatriation Order

The Court's August 5, 2013 Order required you to repatriate immediately all assets or funds that were obtained, directly or indirectly, from the activities described in complaint filed by the Commission in this action ("Complaint") and that are now located outside the jurisdiction of the Court. To date, you have failed to let us know whether or not such assets exist, or to otherwise comply with this repatriation order. I refer you to Section III of the August 5, 2013 Order for your exact obligations in this regard.

### C. Answer

Your answer to the Complaint was due on August 13, 2013.

## II.   UPCOMING DEADLINES

### A. Initial Disclosures

As we discussed during our August 21, 2013 Rule 26(f) conference, you are required to make initial disclosures to the Commission under both Rule 26(a)(1) and the Court's Standing Initial Order Governing Proceedings ("OGP"). At the time of our conference, these disclosures were due on November 11, 2013. However, in light of General Order 13-19, dated October 9, 2013 ("General Order 13-19"), the Commission will agree that these disclosures are now due November 20, 2013. Copies of Rule 26 and the OGP are enclosed for your reference.

Under Rule 26(a)(1), among other things, you must disclose to the Commission:

(1) The name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the

2

subjects of that information – that you may use to support any claim or defense, unless the use would be solely for impeachment; and

(2) A copy – or a description by category and location – of all documents, electronically stored information ("ESI"), and tangible things that you have in your possession, custody, or control and may use in support of any claim or defense, unless the use would be solely for impeachment.

I refer you to the text of Rule 26 for your complete disclosure obligations under the rule.

Under the OGP, in addition to the disclosures required by Rule 26(a)(1), among other things, your initial disclosures shall include:

(1) The correct names of the parties to the action;

(2) The name and, if known, the address and telephone number of any potential parties to the action;

(3) The name and, if known, the address and telephone number of persons having knowledge of facts relevant to the claim or defense of any party, a brief characterization of their connection to the case and a fair summary of the substance of the information known to such person; and

(4) A copy of all documents and ESI, witness statements, and tangible things in your possession, custody, or control, that are relevant to the claim or defense of any party.

**Pursuant to the OGP, "A party that fails to timely disclose such information will not, unless such failure is harmless, be permitted to use such evidence at trial, hearing or in support of a motion."** I refer you to the language of the OGP for your complete disclosure obligations under the OGP.

### B. Document Production

On October 9, 2013, the Commission served you with Plaintiff's First Request to Defendants for Production of Documents ("First Request"). At the time, your response to the Commission's First Request was due November 11, 2013. However, in light of General Order 13-19, the Commission will agree that your response is now due November 20, 2013. A copy of the First Request is enclosed for your reference. I refer you to the First Request for the list of documents and communications you are required to produce to the Commission.

\*       \*       \*

If you do not provide your verified accounting or meet other past-due obligations in this litigation, the Commission may seek appropriate sanctions, including a contempt order, against you.

3

If you would like to discuss these matters further, do not hesitate to let me know.  Should you retain counsel to represent you in this matter, please have counsel contact me immediately.

Yours truly,

Philip Moustakis

Enclosures:
August 5, 2013 Order
August 29, 2013 Order
Rule 26
Standard Initial Order Governing Proceedings
General Order 13-19
Plaintiff's First Request to Defendants for Production of Documents

4

EXHIBIT 9

**Moustakis, Philip**

| | |
|---|---|
| **From:** | Trendon <tshavers@buscog.com> |
| **Sent:** | Friday, August 30, 2013 11:33 AM |
| **To:** | Moustakis, Philip |
| **Subject:** | Accounting |
| **Attachments:** | VerifiedAccounting.pdf |

Philip,

I've realized that the SEC already has the record of payments or disbursements made by me.  So the only information missing are assets and expenses which are included in the attached document.

Trendon

08/30/2013

## RE: Verified Accounting

### Current Assets
**Cash Accounts**

| Woodforest Bank | Account # ...4535 (Open) | $1,084.09 |
|---|---|---|
| Woodforest Bank | Account # ...2815 (Closed) | $0.00 |
| Woodforest Bank | Account # ...2938 (Closed) | $0.00 |
| Dwolla | | $0.00 |
| Paypal | | -$269.14 |
| Mt. Gox | | .$0.005 |

**Auto**

| 2006 Ford F-350 | McKinney | Equity | $15,000 |
|---|---|---|---|

**Bitcoin**

None, there have been no transactions since the freeze order was issued. Prior transactions, addresses or private keys are not available.

### Current Monthly Expenses

| Rent (Home) | Regency Apartments | $1,810.00 |
|---|---|---|
| Phone | Verizon | $189.40 |
| Internet/TV | AT&T | $129.80 |
| Auto | Truck | $383.90 |
| Electric | Coserv | $331.60 |
| Water | Mckinney Municipal | $102.00 |
| Food | School lunches, groceries | $600.00 |
| Other | Gas, Insurance, etc | $325.00 |

I declare that this accounting has been examined by me and that the contents are true to the best of my information, knowledge, and belief.

Trendon Shavers
08/30/2013

## Moustakis, Philip

| | |
|---|---|
| **From:** | Moustakis, Philip |
| **Sent:** | Friday, August 30, 2013 12:00 PM |
| **To:** | 'tshavers@buscog.com'; 'trendon@buscog.com' |
| **Cc:** | Szczepanik, Valerie; Magee, Jessica B.; Gulde, Matthew; Downes, Daphne P. |
| **Subject:** | Re: Accounting |

Mr. Shavers:

This accounting is grossly inadequate and incomplete. We would ask that you review the Court's Order freezing your assets and detailing the requirements of a proper accounting, and that you meet your Court-ordered obligations without further delay.

Best regards,
Philip Moustakis

---

**From:** Trendon [mailto:tshavers@buscog.com]
**Sent:** Friday, August 30, 2013 11:33 AM Eastern Standard Time
**To:** Moustakis, Philip
**Subject:** Accounting

Philip,

I've realized that the SEC already has the record of payments or disbursements made by me.  So the only information missing are assets and expenses which are included in the attached document.

Trendon

**Moustakis, Philip**

| | |
|---|---|
| **From:** | Trendon <tshavers@buscog.com> |
| **Sent:** | Friday, August 30, 2013 12:06 PM |
| **To:** | Moustakis, Philip |
| **Subject:** | Re: Accounting |

Philip,

No one is holding assets for me, the payments and disbursements are already included in your initial complaint supporting documents.

I have nothing else to give you.  Those are my assets and my expenses.

Please advise,

Trendon

On Fri, Aug 30, 2013 at 10:59 AM, Moustakis, Philip <MOUSTAKISP@sec.gov> wrote:
Mr. Shavers:

This accounting is grossly inadequate and incomplete. We would ask that you review the Court's Order freezing your assets and detailing the requirements of a proper accounting, and that you meet your Court-ordered obligations without further delay.

Best regards,
Philip Moustakis

**From**: Trendon [mailto:tshavers@buscog.com]
**Sent**: Friday, August 30, 2013 11:33 AM Eastern Standard Time
**To**: Moustakis, Philip
**Subject**: Accounting

Philip,

I've realized that the SEC already has the record of payments or disbursements made by me.  So the only information missing are assets and expenses which are included in the attached document.

Trendon

--
T

**Moustakis, Philip**

| | |
|---|---|
| **From:** | Moustakis, Philip |
| **Sent:** | Friday, August 30, 2013 1:27 PM |
| **To:** | 'tshavers@buscog.com'; 'trendon@buscog.com' |
| **Cc:** | Szczepanik, Valerie; Downes, Daphne P.; Magee, Jessica B.; Gulde, Matthew |
| **Subject:** | Re: Accounting |

Mr. Shavers:

The Court ordered accounting requires you provide, among other things, an accounting of all assets or income received by you and/or Bitcoin Savings and Trust ("BTCST") and transferred from you and/or BTCST, from August 1, 2011 to the date of the accounting, describing the details of those transfers, as well as the details of your and BTCST's liabilities. Again, I refer you to the text of the Court's Order freezing your assets and requiring you to provide the accounting for the exact requirements. Additionally, as we stated in Court yesterday, we would need to know the income and assets, and expenses and liabilities of your wife and dependents before we have a conversation about a possible carve-out, if any, or any release of funds.

Best regards,
Philip Moustakis

**From:** Trendon [mailto:tshavers@buscog.com]
**Sent:** Friday, August 30, 2013 12:05 PM Eastern Standard Time
**To:** Moustakis, Philip
**Subject:** Re: Accounting

Philip,

No one is holding assets for me, the payments and disbursements are already included in your initial complaint supporting documents.

I have nothing else to give you.  Those are my assets and my expenses.

Please advise,

Trendon

On Fri, Aug 30, 2013 at 10:59 AM, Moustakis, Philip <MOUSTAKISP@sec.gov> wrote:
Mr. Shavers:

This accounting is grossly inadequate and incomplete. We would ask that you review the Court's Order freezing your assets and detailing the requirements of a proper accounting, and that you meet your Court-ordered obligations without further delay.

Best regards,
Philip Moustakis

**From**: Trendon [mailto:tshavers@buscog.com]
**Sent**: Friday, August 30, 2013 11:33 AM Eastern Standard Time
**To**: Moustakis, Philip
**Subject**: Accounting

Philip,

I've realized that the SEC already has the record of payments or disbursements made by me.  So the only information missing are assets and expenses which are included in the attached document.

Trendon

--
T

**Moustakis, Philip**

| | |
|---|---|
| **From:** | Trendon <tshavers@buscog.com> |
| **Sent:** | Friday, August 30, 2013 1:44 PM |
| **To:** | Moustakis, Philip |
| **Subject:** | Re: Accounting |

Philip,

I don't know how I'd be able to get records for every transaction that happened for the last two years, considering I have no access to Dwolla, Paypal or my bank statements for the past accounts.  To subpoena them all would cost money (which I don't have) and I don't even know how to do it.  I truly believe this kind of detailed accounting is exhaustive and most likely duplicate information that the commission and court already have.

My wife doesn't work, see rarely receives child support from the kids birth father, which he's behind by more than $80,000.

Trendon


On Fri, Aug 30, 2013 at 12:26 PM, Moustakis, Philip <MOUSTAKISP@sec.gov> wrote:
Mr. Shavers:

The Court ordered accounting requires you provide, among other things, an accounting of all assets or income received by you and/or Bitcoin Savings and Trust ("BTCST") and transferred from you and/or BTCST, from August 1, 2011 to the date of the accounting, describing the details of those transfers, as well as the details of your and BTCST's liabilities. Again, I refer you to the text of the Court's Order freezing your assets and requiring you to provide the accounting for the exact requirements. Additionally, as we stated in Court yesterday, we would need to know the income and assets, and expenses and liabilities of your wife and dependents before we have a conversation about a possible carve-out, if any, or any release of funds.

Best regards,
Philip Moustakis

**From**: Trendon [mailto:tshavers@buscog.com]
**Sent**: Friday, August 30, 2013 12:05 PM Eastern Standard Time
**To**: Moustakis, Philip
**Subject**: Re: Accounting

Philip,

No one is holding assets for me, the payments and disbursements are already included in your initial complaint supporting documents.

I have nothing else to give you.  Those are my assets and my expenses.

Please advise,

Trendon

1

On Fri, Aug 30, 2013 at 10:59 AM, Moustakis, Philip <MOUSTAKISP@sec.gov> wrote:
Mr. Shavers:

This accounting is grossly inadequate and incomplete. We would ask that you review the Court's Order freezing your assets and detailing the requirements of a proper accounting, and that you meet your Court-ordered obligations without further delay.

Best regards,
Philip Moustakis

**From**: Trendon [mailto:tshavers@buscog.com]
**Sent**: Friday, August 30, 2013 11:33 AM Eastern Standard Time
**To**: Moustakis, Philip
**Subject**: Accounting

Philip,

I've realized that the SEC already has the record of payments or disbursements made by me.  So the only information missing are assets and expenses which are included in the attached document.

Trendon

--
T

--
T

# EXHIBIT 10



# U.S. Securities and Exchange Commission

## Division of Enforcement

## Prejudgment Interest Report

### SEC v. Shavers, 4:13-CV-416 (E.D. Tex.)

| Quarter Range | Annual Rate | Period Rate | Quarter Interest | Principal+Interest |
|---|---|---|---|---|
| Violation Amount | | | | $38,638,569.00 |
| 09/01/2012-09/30/2012 | 3% | 0.25% | $95,012.87 | $38,733,581.87 |
| 10/01/2012-12/31/2012 | 3% | 0.75% | $292,089.31 | $39,025,671.18 |
| 01/01/2013-03/31/2013 | 3% | 0.74% | $288,683.05 | $39,314,354.23 |
| 04/01/2013-06/30/2013 | 3% | 0.75% | $294,049.83 | $39,608,404.06 |
| 07/01/2013-09/30/2013 | 3% | 0.76% | $299,504.64 | $39,907,908.70 |
| 10/01/2013-12/31/2013 | 3% | 0.76% | $301,769.39 | $40,209,678.09 |
| 01/01/2014-02/28/2014 | 3% | 0.48% | $194,989.40 | $40,404,667.49 |

| Prejudgment Violation Range | Quarter Interest Total | Prejudgment Total |
|---|---|---|
| **09/01/2012-02/28/2014** | **$1,766,098.49** | **$40,404,667.49** |