

# TEXAS DEPARTMENT OF BANKING
★ *Dedicated to Excellence in Texas Banking* ★

## SUPERVISORY MEMORANDUM – 1037

**DATE:** April 3, 2014

**TO:** All Virtual Currency Companies Operating or Desiring to Operate in Texas

**FROM:** Charles G. Cooper, Banking Commissioner

**SUBJECT:** Regulatory Treatment of Virtual Currencies Under the Texas Money Services Act

**Purpose**

Virtual currencies have proliferated in recent years and, particularly with the advent of cryptocurrencies like Bitcoin, have raised novel questions in relation to money transmission and currency exchange. This supervisory memorandum outlines the policy of the Texas Department of Banking (Department) with regard to virtual currencies. This policy expresses the Department's interpretation of the Texas Money Services Act,[1] and the application of its interpretation to various activities involving virtual currencies. While the popularity of Bitcoin has sparked new discourse on the nature of money and transferability of value, this memorandum seeks only to establish the regulatory treatment of virtual currencies under existing statutory definitions.

**Types of Virtual Currency**

In broad terms, a virtual currency is an electronic medium of exchange typically used to purchase goods and services from certain merchants or to exchange for other currencies, either virtual or sovereign.[2]  As of the date of this memorandum the Department is not aware of any virtual currency that has legal tender status in any jurisdiction, nor of any virtual currency issued by a governmental central bank. As such, virtual currencies exist outside established financial institution systems. There are many different virtual currency schemes, and it is not easy to classify all of them, but for purposes of this memorandum, they can generally be divided into two basic types:  centralized and decentralized.

Centralized virtual currencies are created and issued by a specified source. They rely on an entity with some form of authority or control over the currency. Typically, the authority behind a

---

[1] Texas Finance Code Chapter 151.
[2] In this memorandum the term sovereign currency will be used to mean government-issued currencies with legal tender status in the country of issuance. In most of the literature pertaining to virtual currency, the term fiat currency is used to refer to government-issued legal tender. Technically, fiat currency is a subset of government-issued legal tender. Fiat currency has no intrinsic value; its value is established by law. By contrast, commodity-backed currency has intrinsic value insofar as it represents a claim on a commodity such as gold or silver. Here, sovereign currency means both commodity-backed and fiat currency issued by a government and designated as legal tender.

1

centralized virtual currency is also the creator. Centralized virtual currencies can be further divided into subclassifications that quickly become too complex to apply a universal policy. Some can be purchased with sovereign currency, but cannot be exchanged back to sovereign currency; some can be converted back to sovereign currency; some are used only for purchase of goods and services from a closed universe of merchants, while others may have a theoretically open universe of merchants. Some centralized currencies are backed by the issuer with sovereign currency or precious metals, and therefore derive intrinsic value.

In contrast, decentralized virtual currencies are not created or issued by a particular person or entity, have no administrator, and have no central repository. Thus far, decentralized currencies are all cryptocurrencies such as Bitcoin, Litecoin, Peercoin, Namecoin, and so on. A cryptocurrency is based on a cryptographic protocol that manages the creation of new units of the currency through a peer-to-peer network. The creation of cryptocurrency happens through a process called mining that basically involves running an application on a computer that performs proof-of-work calculations. When the computer performs a sufficient amount of these calculations, the cryptocurrency's underlying protocol essentially generates a new unit of the currency that can be delivered to the miner's wallet. Because users' wallets act as the connection points of the cryptocurrency's peer-to-peer network, transfers of cryptocurrency are made directly from wallet to wallet, without any intermediary, whereas transmissions of sovereign currencies must be made through one or more intermediaries such as a financial institution or money transmitter.

One important characteristic of cryptocurrency is its lack of intrinsic value. A unit of cryptocurrency does not represent a claim on a commodity, and is not convertible by law. And unlike fiat currencies, there is no governmental authority or central bank establishing its value through law or regulation. Its value is only what a buyer is willing to pay for it. Most cryptocurrencies are traded on third party exchange sites, where the exchange rates with sovereign currencies are determined by averaging the transactions that occur. Some experts consider cryptocurrency to be a new asset class that is neither currency nor commodity, but possessing characteristics of both, as well as characteristics of neither.

**Analysis**

*Currency Exchange*

Exchanging virtual currency for sovereign currency is not currency exchange under the Texas Finance Code. Finance Code §151.501(b)(1) defines currency for purposes of currency exchange as "the coin and paper money of the United States or any country that is designated as legal tender and circulates and is customarily used and accepted as a medium of exchange in the country of issuance." Because neither centralized virtual currencies nor cryptocurrencies are coin and paper money issued by the government of a country, they cannot be considered currencies under the statute. Therefore absent a legislative change to the statute, no currency exchange license is required in Texas to conduct any type of transaction exchanging virtual with sovereign currencies.

*Money Transmission*

Because factors distinguishing the various centralized virtual currencies are usually complicated and nuanced, to make money transmission licensing determinations the Department must

individually analyze centralized virtual currency schemes. Accordingly, this memorandum does not offer generalized guidance on the treatment of centralized virtual currencies by the Money Services Act's money transmission provisions.

On the other hand, money transmission licensing determinations regarding transactions with cryptocurrency turn on the single question of whether cryptocurrencies should be considered "money or monetary value" under the Money Services Act. Under Finance Code §151.301, money transmission is "the receipt of money or monetary value by any means in exchange for a promise to make the money or monetary value available at a later time or different location." Although there is a great amount of discussion over whether cryptocurrencies should be considered money, for purposes of money transmission regulation in Texas the term is defined by statute. Finance Code §151.301(b)(3) provides that "'money' or 'monetary value' means currency or a claim that can be converted into currency through a financial institution, electronic payments network, or other formal or informal payment system." As already stated, a cryptocurrency is not currency as that word is defined in the Money Services Act. A unit of cryptocurrency is also not a claim.[3] It does not entitle its owner to anything, and creates no duties or obligations in a person who gives, sells, or transfers it. There is no entity that must honor the value of a cryptocurrency, or exchange any given unit of a cryptocurrency for sovereign currency. For comparison, under federal law U.S. coin and paper currency must be honored for payment of all debts, public charges, taxes, and dues, and the U.S. Treasury Department must redeem it for "lawful money."[4] But the owner of a unit of a cryptocurrency has no right or guaranteed ability to convert that unit to sovereign currency. The only way to convert a unit of cryptocurrency to sovereign currency is to find a willing buyer. Therefore cryptocurrencies as currently implemented cannot be considered money or monetary value under the Money Services Act.

**Statement of Policy**

Because cryptocurrency is not money under the Money Services Act, receiving it in exchange for a promise to make it available at a later time or different location is not money transmission. Consequently, absent the involvement of sovereign currency in a transaction, no money transmission can occur. However, when a cryptocurrency transaction does include sovereign currency, it may be money transmission depending on how the sovereign currency is handled. A licensing analysis will be based on the handling of the sovereign currency.

To provide further guidance, the regulatory treatment of some common types of transactions involving cryptocurrency can be determined as follows.

- Exchange of cryptocurrency for sovereign currency between two parties is not money transmission. This is essentially a sale of goods between two parties. The seller gives units of cryptocurrency to the buyer, who pays the seller directly with sovereign currency. The seller does not receive the sovereign currency in exchange for a promise to

---

[3] The legal definition of a claim can essentially be stated as a right enforceable by a court. *See* Black's Law Dictionary 264 (8th ed. 2004).

[4] 31 U.S.C. §5103; 12 U.S.C. §411 ("The said notes shall be obligations of the United States and shall be receivable by all national and member banks and Federal Reserve banks and for all taxes, customs, and other public dues. They shall be redeemed in lawful money on demand at the Treasury Department of the United States, in the city of Washington, District of Columbia, or at any Federal Reserve bank.")

    make it available at a later time or different location.

- <u>Exchange of one cryptocurrency for another cryptocurrency is not money transmission. Regardless of how many parties are involved, there is no receipt of money, and therefore no money transmission occurs.</u>

- Transfer of cryptocurrency by itself is not money transmission. Because cryptocurrency is not money or monetary value, the receipt of it in exchange for a promise to make it available at a later time or different location is not money transmission. This includes intermediaries who receive cryptocurrency for transfer to a third party, and entities who, akin to depositories, hold cryptocurrency on behalf of customers.

- Exchange of cryptocurrency for sovereign currency through a third party exchanger is generally money transmission. For example, most Bitcoin exchange sites, such as the failed Mt. Gox, facilitate exchanges by acting as an escrow-like intermediary. In a typical transaction, the buyer of cryptocurrency sends sovereign currency to the exchanger who holds the funds until it determines that the terms of the sale have been satisfied before remitting the funds to the seller. Irrespective of its handling of the cryptocurrency, the exchanger conducts money transmission by receiving the buyer's sovereign currency in exchange for a promise to make it available to the seller.

- Exchange of cryptocurrency for sovereign currency through an automated machine is usually but not always money transmission. For example, several companies have begun selling automated machines commonly called "Bitcoin ATMs" that facilitate contemporaneous exchanges of bitcoins for sovereign currency. Most such machines currently available, when operating in their default mode act as an intermediary between a buyer and seller, typically connecting through one of the established exchange sites. When a customer buys or sells bitcoins through a machine configured this way, the operator of the machine receives the buyer's sovereign currency in exchange for a promise to make it available to the seller. However it is worth noting that at least some Bitcoin ATMs can be configured to conduct transactions only between the customer and the machine's operator, with no third parties involved. If the machine never involves a third party, and only facilitates a sale or purchase of Bitcoins by the machine's operator directly with the customer, there is no money transmission because at no time is money received in exchange for a promise to make it available at a later time or different location.

A cryptocurrency business that conducts money transmission must comply with all applicable licensing provisions of Finance Code Chapter 151 and of Title 7, Texas Administrative Code, Chapter 33. In addition, several considerations should be highlighted. First, because a money transmitter conducting virtual currency transactions conducts business through the Internet, the minimum net worth requirement under Finance Code §151.307 is $500,000.[5] Be advised that the Commissioner may increase the required net worth up to a maximum of $1,000,000 based on the factors set out in §151.307(b). Second, a license holder may not include virtual currency assets in calculations for its permissible investments under Finance Code §151.309. Lastly, pursuant to Finance Code §151.203(a)(3) the Commissioner requires that license applicants who handle

---

[5] Under §151.307(a), a minimum net worth of $500,000 is required if a business operates through five or more locations. It has been the Department's policy that license holders operating through the Internet are considered to be in more than five locations. *See* http://www.dob.texas.gov/forms/corp-mw01.htm#netw

virtual currencies in the course of their money transmission activities must submit a current third party security audit of their relevant computer systems. Because the new technological paradigm created by cryptocurrencies has brought with it new risks for the consumer, it is incumbent on a license applicant to demonstrate that all virtual currency is secure while controlled by the applicant.