IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　　　　　　　　　　　Plaintiff,<br><br>-- against –<br><br>TRENDON T. SHAVERS AND BITCOIN SAVINGS AND TRUST,<br><br>　　　　　　　　　　　　　　　　Defendants. | CIVIL ACTION NO.<br>4:13-CV-416 (RC) (ALM) |

PLAINTIFF'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR AN ORDER TO SHOW CAUSE,
RULE 37 SANCTIONS, AND OTHER RELIEF

　　　　Plaintiff Securities and Exchange Commission ("Commission") respectfully submits this Reply Memorandum of Law in Support of its Motion for an Order to Show Cause, Rule 37 Sanctions, and other Relief [Docket No. 33] against defendant Trendon T. Shavers ("Shavers") and Bitcoin Savings and Trust ("BTCST") for their willful refusal (a) to comply with the Court's August 5, 2013 Order Freezing Assets and Granting Other Ancillary Relief [Docket No. 22], including the repatriation order and order to file with the Court and serve upon the Commission a verified accounting of their assets, liabilities, and income; (b) to comply with the Court's August 29, 2013 Order [Docket No. 27]; (c) to make their Rule 26 initial disclosures to the Commission; and (d) to respond to the Commission's October 9, 2013 document request.[1]

---

[1] Because BTCST had not appeared in this action at the time the Commission filed its motion, the motion was directed to Shavers only. However, BTCST now having appeared, and both BTCST and Shavers having filed a joint response to the motion [Docket No. 42] ("Response"), the Commission respectfully requests the Court enter all sanctions it deems appropriate, if any, against both Shavers and BTCST.

I.
**PRELIMINARY STATEMENT**

Defendants have no valid reason for their willful noncompliance with the Court's orders or for their discovery delays. *Twice*, this Court ordered Shavers to provide an accounting. The accounting order, repatriation order, and discovery Shavers refuses to provide are all aimed at further illuminating what Shavers did with the funds he raised from BTCST investors, one of the central issues in this litigation. Thus, the prejudice to the Commission from Shavers' noncompliance is clear. However, Defendants fail to demonstrate any undue prejudice they might suffer as a result of the preclusion order the Commission seeks, arguing instead that they already produced all their relevant evidence to the Commission during the investigation that led to this enforcement action. Finally, Defendants continue to delay and engage in conduct that underscores the appropriateness of sanctions, including launching a website to raise funds which contains inflammatory and misleading statements that threaten to chill potential witnesses and taint a potential jury pool.

II.
**ARGUMENT AND AUTHORITIES**

**A. Defendants Offer No Valid Excuse for their Willful Refusal to Comply with the Court's Orders or to Meet their Discovery Obligations in this Litigation.**

Shavers argues that, as a *pro se* litigant, he was ignorant of procedures and discovery rules [see Response, pp. 7-9, 11], and that he believed he was in compliance with the accounting order. [*Id.*, pp. 10-11 ("Defendants submitted their accounting, on time, it is only the Government that now complains that the form is insufficient.")] Shavers' claims of ignorance are not credible. Counsel for the Commission repeatedly informed Shavers of his past-due obligations, including the accounting, repatriation order, Rule 26 initial disclosures, and

*SEC v. Shavers, et al.*, 4:13-CV-416 (RC) (ALM)
Plaintiff's Reply Memorandum of Law in Support
of its Motion for a Show Cause Order
Page 2 of 9

document production, and warned Shavers that his non-compliance could result in the Commission seeking sanctions against him. [See Declaration of Philip Moustakis concurrently filed herewith ("Reply Decl."), Exs. A and B.] Tellingly, in the two months following filing of the Commission's sanctions-seeking motion, Shavers made no efforts to oppose or respond to the motion, explain his claimed ignorance, or cure his failures. In light of this record, it is difficult to fathom the factual basis for Shavers' "excusable belief" that he was in full compliance.

Shavers' excuse is also legally insufficient. "The right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law." *Birl v. Estelle*, 660 F.2d. 592 (5th Cir. 1981). The noncompliant party has the burden of establishing excusable neglect which, in the Fifth Circuit, is a strict standard requiring more than mere ignorance. *Id.* The party must make a clear showing that the circumstances causing the delay were unique and the neglect was excusable. *Id.* Moreover, even a non-lawyer should realize the peril in ignoring court orders and communications from the court or opposing counsel. *See Guillory v. Beaumont Indep. Sch, Dist.*, 2011 WL 1898939, at *2 (E.D. Tex. May 11, 2011). Especially when he is repeatedly warned of that peril. That Shavers was aware of the Court's orders and his outstanding discovery obligations is not in question.

Moreover, the purported "accounting" Shavers refers to is woefully deficient. In a one-page document, Shavers provided no information concerning assets or income received by him (or for his benefit) or transferred by him for the more than two-year period covered by the accounting order. Shavers knows this document is inadequate because, on August 5, 2013, the Court discussed with Shavers using the records of Bitcoin transactions before the Court to make his accounting [Docket No. 48 (audio file at 1:02:00 to 1:08:10)] and, on August 30, 2013 (the

*SEC v. Shavers, et al.*, 4:13-CV-416 (RC) (ALM)
Plaintiff's Reply Memorandum of Law in Support
of its Motion for a Show Cause Order
Page 3 of 9

same day it was received), counsel for the Commission informed Shavers that the document did not comply with the Court's orders. [Reply Decl., Ex. C.] Shavers argues now that the "accounting" is complete because the Court instructed him "to account for all transactions based on the information he has" [see Response, p. 9]. However, this ignores the Court's guidance and the fact that Shavers has information concerning literally thousands of transactions at his disposal and these transactions appear nowhere in the "accounting." Documents and data produced by Shavers to the Commission during its investigation, and materials filed with the Court and served upon Shavers by the Commission at the outset of this case, include: (a) BTCST investor account data; (b) transaction data for Shavers' "main operating wallet" for BTCST; (c) records for Shavers' personal checking account at Woodforest National Bank; (d) records for Shavers' personal account at Dwolla Incorporated; and (e) records for Shavers' personal account at PayPal. Shavers has made no effort to incorporate this information into his accounting.

And, instead of now producing an accounting, Shavers argues no further effort by him is necessary because any accounting he might produce would be nothing more than a reformatting of "data [the Commission] already has." [See *id.*, p. 11.] Concerning his refusal to comply with his discovery obligations, Shavers argues the Commission is already in possession of all of his evidence, he has nothing more, and any production by him would be duplicative of documents already in the Commission's possession. [See *id.*, pp. 1, 2, 6, 13.] Shavers is not absolved of the responsibility to comply with the Court's orders to provide an accounting because, in his view, the Commission already has the data it needs to piece together the accounting itself. Nor is he absolved of his responsibility to make initial disclosures or to respond to the Commission's

*SEC v. Shavers, et al.*, 4:13-CV-416 (RC) (ALM)
Plaintiff's Reply Memorandum of Law in Support
of its Motion for a Show Cause Order
Page 4 of 9

document request, or to certify that production is complete because, as he claims, he has no additional evidence to offer.

### B. Defendants Will Not Be Unduly Prejudiced by the Preclusion Order the Commission Seeks.

Defendants, in one breath, acknowledge it would be appropriate for the Court to preclude them from introducing any evidence in this action not already produced by them to the Commission [see *id*., p. 2] while, in another breath, argue that preclusion would unduly prejudice them [see *id*., p. 7]. Defendants misunderstand the Commission's motion and the relief it seeks. The only evidence Defendants point to – the preclusion of which, they claim, would be prejudicial – is possible expert testimony they may offer. [See *id*., p. 13.] The Commission does not seek to preclude Defendants from offering expert testimony to opine on the record evidence in this action, only from introducing evidence they have not already produced to the Commission concerning their use of BTCST investors' funds. On this latter point, it appears, the parties agree. After all, Defendants cannot be prejudiced by a preclusion order that bars them from introducing evidence they claim they do not have. Indeed, because it would focus on Defendants' use of BTCST investors' funds, the preclusion order the Commission seeks is appropriately tailored to address Defendants' willful refusal to provide this evidence.

### C. Defendants Continue to Delay and Engage in Conduct that Underscores the Appropriateness of Sanctions.

Defendants' arguments opposing sanctions merely provide them cover for further delay. Shavers claims an accounting firm is on standby to assist him in producing the accounting he owes to the Court and to the Commission. Shavers does not detail any efforts since August 30, 2013 (or since engaging counsel) to comply with this Court's orders to make the accounting. Incredibly,

*SEC v. Shavers, et al.*, 4:13-CV-416 (RC) (ALM)
Plaintiff's Reply Memorandum of Law in Support
of its Motion for a Show Cause Order
Page 5 of 9

Shavers shifts the burden back to the Court, stating that, to the extent the Court is not satisfied with his current level of compliance, the Court should first issue a warning to him and then give him more time to provide the already twice-ordered accounting. Similarly, rather than inform the Court or the Commission whether there are any assets subject to the repatriation order, Shavers argues that by the express terms of the order he was not required to do so. This ignores the fact that the Court's orders to provide an accounting and repatriate assets were issued simultaneously so that any assets repatriated by Shavers should appear in his accounting. Finally, Shavers asserts an "unclean hands" argument claiming the Commission failed to make its initial disclosures until five days prior to the filing of the instant motion. This argument is easily disproven by a review of the Commission's correspondence with Defendants.[2]

Defendants' Response exhibits the same cavalier approach to the Court's orders and their discovery obligations that led the Commission to seek sanctions in the first place. Notably, Defendants did not use the extra time the Court granted them to begin to comply with the

---

[2] The Commission made its initial disclosures to Shavers on October 9, 2013, which included a description by category of all documents in its possession. Reply Decl., Ex. D. Counsel for the Commission requested Shavers contact him to discuss the format of production for documents referenced in the disclosures and, having never heard from Shavers, on February 26, 2014, produced certain documents to Shavers. *Id.*, Exs. B and D. Shavers claims also that Commission staff demanded he sign a confidentiality agreement before turning over its investigative file. On the contrary, Shavers demanded to know whether the Commission had a formal investigation opened at the time Shavers made certain admissions to Commission staff. In response, Commission staff informed Shavers of the process for requesting a copy of the Commission's Formal Order of Investigation, which does require counsel for the requesting party to make a written request and to represent that he will keep the Formal Order confidential and will not disseminate it further, except in connection with his representation of his client in the matter. See *id.*, Ex. E. To date, Shavers has not made such a request.

*SEC v. Shavers, et al.*, 4:13-CV-416 (RC) (ALM)
Plaintiff's Reply Memorandum of Law in Support
of its Motion for a Show Cause Order
Page 6 of 9

outstanding orders and discovery requests, but instead used this time to create and, on May 25, 2014, launch a website to raise money. [Reply Decl., Ex. F.]

The homepage of the site states: "Donate now to restrain the SEC's power grab over bitcoin." [*Id*.] A page on the site dedicated to a blog about the case, among other things, states:

> The case the SEC is bringing forward – if won – would establish a very dangerous precedent that says anyone exchanging bitcoin could be SELLING SECURITIES, thus subject to SEC regulation, SEC scrutiny, SEC investigation, and SEC legal action. This would include peer-to-peer bitcoin exchanging, all trades at Satoshi Square in NYC,[3] miners selling bitcoin, basically anyone that touches bitcoin and later trades or sells it would be under the scrutiny of the SEC. If you're not registered with the SEC – or if you have engaged in these types of activities in the past without being registered – you could be fined tens of thousands of dollars per transaction, or worse, jail. [*Id*.]

The site also warns: "If the SEC is successful in this case it will set a dangerous precedent of allowing the SEC to regulate Bitcoin Exchanges." [*Id*.]

This website misrepresents the nature of this action. Commission enforcement actions cannot result in incarceration, as Shavers states on the site, because the Commission does not have criminal authority. The Commission's Complaint and subsequent filings allege a straightforward Ponzi scheme, with the only wrinkle being that Shavers stole bitcoins from his investors instead of dollars. The Commission has not taken the position in this litigation that bitcoins themselves are securities, that buying, selling or exchanging bitcoins requires registration with the Commission, or that anyone touching bitcoin transactions will subject themselves to penalties or jail, as the website suggests. Counsel for the Commission is concerned such misrepresentations will poison potential witnesses to this action who are Bitcoin

---

[3] Satoshi Square is a periodic Bitcoin gathering that includes face-to-face trading. There have been Satoshi Square events in New York, London, and Los Angeles.

*SEC v. Shavers, et al.*, 4:13-CV-416 (RC) (ALM)
Plaintiff's Reply Memorandum of Law in Support
of its Motion for a Show Cause Order
Page 7 of 9

users or enthusiasts, and the potential jury pool. The fact that Defendants seek to raise funds based on misrepresentations only underscores the need for sanctions.

## III.
## CONCLUSION

For all of the foregoing reasons, the Commission respectfully requests the Court enter an Order precluding Defendants from introducing evidence concerning their use of BTCST investors' funds and directing that facts proffered by the Commission concerning the same be taken as established for purposes of this action, and providing any additional relief which the Court deems just and proper.

Dated: June 13, 2014

Respectfully Submitted,

*/s/ Jessica B. Magee*
JESSICA B. MAGEE
Texas Bar No. 24037757
Securities and Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, TX 76102
(817) 978-6465
mageej@sec.gov

Of Counsel:
Valerie A. Szczepanik*
Securities and Exchange Commission
Brookfield Place
200 Vesey Street, Ste. 400
New York, NY 10281-1022
(212) 336-0175
szczepanikv@sec.gov

*Not admitted in E.D. Tex.*

PHILIP MOUSTAKIS (PM-1748)
Securities and Exchange Commission
Brookfield Place
200 Vesey Street, Ste. 400
New York, NY 10281-1022
(212) 336-0542
moustakisp@sec.gov
*Admitted Pro Hac Vice*

ATTORNEYS FOR PLAINTIFF
SECURITIES AND EXCHANGE COMMISSION

*SEC v. Shavers, et al.*, 4:13-CV-416 (RC) (ALM)
Plaintiff's Reply Memorandum of Law in Support
of its Motion for a Show Cause Order
Page 8 of 9

## **CERTIFICATE OF SERVICE**

      I certify that, on June 13, 2014, I electronically filed the foregoing Plaintiff's Reply Memorandum of Law in Support of its Motion for an Order to Show Cause, Rule 37 Sanctions, and other Relief, and supporting declaration and exhibits, with the Clerk of the Court, using the CM/ECF system and rely upon same for service on counsel for all parties registered with the Court as of the date of this filing.

                                    */s/ Jessica B. Magee*
                                    JESSICA B. MAGEE

*SEC v. Shavers, et al.*, 4:13-CV-416 (RC) (ALM)
Plaintiff's Reply Memorandum of Law in Support
of its Motion for a Show Cause Order
Page 9 of 9