**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

**SECURITIES AND EXCHANGE COMMISSION,**

**Plaintiff,**

**-- against –**

**TRENDON T. SHAVERS AND BITCOIN SAVINGS AND TRUST,**

**Defendants.**

**CIVIL ACTION NO. 4:13-CV-416 (RC) (ALM)**

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION OF COURT OPINION DOC 23 REGARDING SUBJECT-MATTER JURISDICTION AND RENEWED RULE 12(b)(1) MOTION**

Dated: June 18, 2014

Respectfully Submitted,

*/s/ Jessica B. Magee*

JESSICA B. MAGEE
Texas Bar No. 24037757
Securities and Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, TX 76102
(817) 978-6465
mageej@sec.gov

PHILIP MOUSTAKIS (PM-1748)
Securities and Exchange Commission
Brookfield Place
200 Vesey Street, Ste. 400
New York, NY 10281-1022
(212) 336-0542
moustakisp@sec.gov
*Admitted Pro Hac Vice*

ATTORNEYS FOR PLAINTIFF
SECURITIES AND EXCHANGE COMMISSION

Of Counsel:
Valerie A. Szczepanik*
Securities and Exchange Commission
Brookfield Place
200 Vesey Street, Ste. 400
New York, NY 10281-1022
(212) 336-0175
szczepanikv@sec.gov

**Not admitted in E.D. Tex.*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........ i

TABLE OF AUTHORITIES ........ ii-iii

I. INTRODUCTION ........ 1

II. STANDARD OF REVIEW ........ 2

III. UNDISPUTED FACTS ........ 3

IV. ARGUMENT AND AUTHORITY ........ 5

A. The Court Has Subject Matter Jurisdiction because the BTCST Investments Are Securities ........ 5

1. The BTCST Investments Are Investment Contracts ........ 6

a. Bitcoins Are Money and Function as Money ........ 7

b. *Howey's* "Investment of Money" Requirement Can Be Satisfied by Consideration other than Money ........ 10

2. The BTCST Investments are Notes and, under *Reves*' "Family Resemblance" Test, Securities ........ 11

B. Defendants' Motion for Reconsideration Should Be Denied ........ 14

V. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 2, 3

*Bell v. Hood*,
327 U.S. 678 (1945) .......... 2

*Frazier v. Manson*,
484 F. Supp. 449 (N.D. Tex. 1980) .......... 10

*International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Daniel*,
439 U.S. 551 (1979) .......... 7, 10

*Lane v. Halliburton*,
529 F.3d 548 (5th Cir. 2008) .......... 2

*Long v. Schultz Cattle Co., Inc.*,
896 F.2d 85 (5th Cir. 1990) .......... 11

*Long v. Shultz Cattle Co., Inc.*,
881 F.2d 129 (5th Cir. 1989) .......... 6

*McClure v. First National Bank of Lubbock, Texas*,
497 F.2d 490 (5th Cir. 1974) .......... 13

*Meason v. Bank of Miami*,
652 F.2d 542 (5th Cir. 1981) .......... 2

*Morrison v. National Austl. Bank Ltd.*,
561 U.S. 247 (2010) .......... 2

*Reves v. Ernst & Young*,
494 U.S. 56 (1990) .......... 1, 6, 11-14

*SEC v. SG Ltd.*,
265 F.3d 42 (1st Cir. 2001) .......... 6

*SEC v. W.J. Howey & Co.*,
328 U.S. 293 (1946) .......... 1, 6-8, 10, 11

*Stoiber v. SEC*,
161 F.3d 745 (D.C. Cir. 1988) .......... 13

*Tcherepnin v. Knight*,
389 U.S. 332 (1967) .......... 7

*Truman v. United States*,
26 F.3d 592 (5th Cir. 1994) .......... 3

*United Housing Foundation, Inc. v. Forman*,
421 U.S. 837 (1975) .......... 7, 11

*Uselton v. Committee Lovelace Motor Freight, Inc.*,
940 F.2d 564 (10th Cir. 1991) .......... 10

*Verdin v. Federal National Mortg. Association*,
2012 WL 2803751 .......... 14

*Williamson v. Tucker*,
645 F.2d 404 (5th Cir. 1981) .......... 2, 7, 14

**FEDERAL STATUTES**

Section 2(a)(1) of the Securities Act of 1933
15 U.S.C. § 77b(a)(1) .......... 5

Section 3(a)(10) of the Exchange Act of 1934
15 U.S.C. § 77c(a)(10) .......... 5

**MISCELLANEOUS**

Texas Dep't of Banking, Supervisory Memorandum 1037 - *Regulatory Treatment of Virtual Currencies under the Texas Money Services Act* (April 3, 2014) .......... 8

Treasury Guidance (FIN-2013-G001) – *Application of FinCEN's Regulations to Persons Administering, Exchanging, or Using Virtual Currencies* (March 18, 2013) .......... 8, 9

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION OF COURT OPINION DOC 23 REGARDING SUBJECT-MATTER JURISDICTION AND RENEWED RULE 12(b)(1) MOTION**

Plaintiff Securities and Exchange Commission ("Commission") respectfully submits this Response in Opposition to Defendants Trendon T. Shavers' ("Shavers") and Bitcoin Savings and Trust's ("BTCST," and together with Shavers, "Defendants") Motion for Reconsideration of Court Opinion Doc 23 Regarding Subject-Matter Jurisdiction and Renewed Rule 12(b)(1) Motion [Doc. No. 46] ("Renewed Rule 12(b)(1) Motion" or "Motion for Reconsideration").

## I. INTRODUCTION

The central argument Defendants advance in support of their renewed challenge to the Court's subject matter jurisdiction is the same argument they advanced when the Court first considered the issue, namely, that bitcoins are not money and, therefore, the investment of bitcoins cannot satisfy the "investment of money" element of the test for an investment contract set forth by the Supreme Court in *SEC v. W.J. Howey & Co.*, 328 U.S. 293 (1946). The sole basis for Defendants' argument that bitcoins are not money is that bitcoins are not legal tender. Defendants' argument fails for three reasons. First, bitcoins are money and Defendants point to no authority, because there is none, supporting the claim that the investment of "money" under *Howey* is restricted to legal tender. Second, the caselaw is clear that the investment element of the *Howey* test may be satisfied by consideration other than money. And third, separate and apart from being investment contracts, the BTCST investments offered and sold by Defendants qualify as notes under *Reves v. Ernst & Young*, 494 U.S. 56 (1990) and, thus, as securities under the federal securities laws. For these reasons, and because the facts and law remain unchanged

since the Court first considered – and rejected – Defendants' jurisdictional challenge, the Court should deny Defendants' Renewed Rule 12(b)(1) Motion and Motion for Reconsideration.

**II.**
**STANDARD OF REVIEW**

As a general rule, a claim arising under the laws of the United States should not be dismissed for lack of subject matter jurisdiction unless the claim is "immaterial and made solely for the purpose of obtaining jurisdiction" or "wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 681-83 (1945); *Meason v. Bank of Miami*, 652 F.2d 542, 546 (5th Cir. 1981) (*en banc*); *Williamson v. Tucker*, 645 F.2d 404, 416 (5th Cir. 1981). Where a defendant's jurisdictional challenge is also a challenge to the existence of a federal cause of action, the proper course is for the district court to find jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case. *Meason*, 652 F.2d at 547; *Williamson*, 645 F.2d at 415; *see Morrison v. Nat'l Austl. Bank Ltd*., 561 U.S. 247, 248 (2010) ("The Second Circuit erred in considering § 10(b)'s extraterritorial reach to raise a question of subject-matter jurisdiction, thus allowing dismissal under Rule 12(b)(1). What conduct § 10(b) reaches is a merits question, while subject-matter jurisdiction refers to a tribunal's power to hear a case.") (citation and quotation marks omitted). Therefore, the question of whether something is a security within the meaning of the federal securities laws should not be determined on a motion for lack of subject matter jurisdiction unless the complaint fails to meet the standards of *Bell*. *Meason*, 652 F.2d at 547; *Williamson*, 645 F.2d at 416.

A motion under Federal Rule of Civil Procedure 12(b)(1) should be granted only if it appears beyond doubt that a plaintiff cannot prove a plausible set of facts in support of its claim. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007)). The Court may find a plausible set of facts by considering: "(1) the

complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* at 557. The Court must accept all well-pleaded allegations in the complaint as true, and construe those allegations in a light most favorable to the plaintiff. *See Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994).

## III.
## UNDISPUTED FACTS

None of the material facts in this litigation are disputed.

The Commission's well-pleaded allegations in its Complaint [Doc. 1], relevant to Defendants' renewed jurisdictional challenge, include:

- "Bitcoin ('BTC') is a virtual currency that may be traded on online exchanges for conventional currencies, including the U.S. dollar, or used to purchase goods and services online" [Complaint,¶ 2];
- "Shavers, operating under the internet name 'pirateat40,' offered and sold BTCST investments over the Internet, raising more than 700,000 BTC in principal investments from BTCST investors, or more than $4.5 million based on the daily average price of BTC when the BTCST investors purchased their BTCST investments" [*id*., ¶ 3];
- "Shavers falsely promised investors up to 7% interest weekly based on BTCST's purported BTC market arbitrage activity, including selling BTC to individuals who wished to buy BTC "off the radar," quickly, or in large quantities" [*id*., ¶ 4]; and
- "In reality, the BTCST offering was a sham and a Ponzi scheme whereby Shavers used new BTCST investors' BTC to pay the promised returns on outstanding BTCST investments and misappropriated BTCST investors' BTC for his personal use" [*id*., ¶ 5].

The undisputed facts evidenced in the record before the Court, relevant to Defendants' renewed jurisdictional challenge, include:

- "BTCST (a/k/a First Pirate Savings and Trust) was an unincorporated online fiction in which Shavers solicited and accepted all investments, and paid all purported returns, in the digital currency known as Bitcoin" [Plaintiff's Motion for Summary Judgment or, in the Alternative, for Default Judgment

and Memorandum in Support [Doc. No. 32] ("Motion for Summary Judgment"), ¶ 2];

- "From at least February 2011 through August 2012 ('relevant period'), as he admits, Shavers offered for sale, directly and indirectly, what purported to be investments in BTCST over the Internet" [*id.*, ¶ 4];
- "During the relevant period, as he admits, Shavers, operating under the internet name 'pirateat40,' solicited BTCST investors in online chat rooms dedicated to Bitcoin and on the Bitcoin Forum, a publicly available website dedicated to Bitcoin where, among other things, numerous bitcoin-denominated investment opportunities were posted [*id.*, ¶ 6];
- "During the relevant period, Shavers falsely promised BTCST investors up to 1% interest daily to be paid every three days (at first) or 7% interest weekly (later in the scheme), purportedly based on Shavers' trading of bitcoin against the U.S. dollar" [*id.*, ¶ 7]
- "Bitcoin, commonly abbreviated as 'BTC,' is a decentralized digital currency that may be used to purchase goods and services online, or traded on online exchanges for conventional currencies, including the U.S. dollar…. Since its introduction in 2009, bitcoin's value has been volatile, ranging from less than $2 per bitcoin to more than $1,200 per bitcoin. Currently, there are more than 12.2 million bitcoins in circulation" [*id.*, ¶ 8];
- Shavers admits he held the BTCST investor deposit addresses and the private keys for those addresses in a single bitcoin wallet which he referred to as his 'main operating wallet'" [*id.*, ¶ 14];
- "During the relevant period, as he admits, Shavers used his main operating wallet to take deposits from, and pay withdrawals and purported returns to, BTCST investors" [*id.*, ¶ 15];
- "Shavers admits that, during the relevant period, he maintained a 'reserve fund' of bitcoins to pay withdrawals and purported returns to BTCST investors" [*id.*, ¶ 18];
- "Shavers admits that, during the relevant period, he used the 'reserve fund' to honor BTCST investor withdrawal requests whenever he failed to generate sufficient returns, in a timely fashion, from BTCST's purported investment activities to cover the withdrawals" [*id.*, ¶ 20];
- "During the relevant period, contrary to representations Shavers made to BTCST investors, BTCST was a sham and a Ponzi scheme, whereby Shavers used new bitcoins received from BTCST investors to make payments on outstanding BTCST investments and diverted BTCST investors' bitcoins for his personal use" [*id.*, ¶ 41];
- "By August 2012, as he admits, Shavers shut down BTCST because he could not pay BTCST investors what he owed them" [*id.*, ¶ 48];

- "During the relevant period, Shavers sold BTCST investments, directly or indirectly, to at least eighty BTCST investors" [*id*., ¶ 49];
- "During the relevant period, Shavers received at least 732,050 bitcoins in principal investments from BTCST investors into his main operating wallet for BTCST" [*id*., ¶ 62];
- "During the relevant period, Shavers returned at least 551,231 bitcoins to BTCST investors in withdrawals and purported interest payments from his main operating wallet for BTCST" [*id*., ¶ 63];
- "During the relevant period (and in the weeks that followed), Shavers transferred at least 150,649 bitcoins from his main operating wallet for BTCST to his personal account at Mt. Gox, a bitcoin currency exchange headquartered in Tokyo, Japan that exchanged bitcoins for U.S. dollars and other conventional currencies. Among other things, Shavers then sold or used these bitcoins to day-trade (converting bitcoins to U.S. dollars and vice versa), suffering a net loss from his day-trading, but realizing net proceeds of $164,758 from his net sales of 86,202 bitcoins" [*id*., ¶ 64];
- Defendants raised 732,050 bitcoins in principal investments from BTCST investors, worth $4,777,403 when converted into U.S. dollars based on the daily average price of bitcoin when the BTCST investors purchased their BTCST investments from Defendants [*id*., ¶ 62 and Ex. 5, ¶ 12(a)]; and
- Defendants' illicit gains obtained as a result of their fraud (bitcoins received from BTCST investors less bitcoins returned to them) total 180,819 bitcoins, or more than $101 million based on exchange rates available at the time of the Commission's Motion for Summary Judgment [*id*., ¶ 67]; or $1,380,752 based on the average daily price of bitcoin when the BTCST investors purchased their BTCST investments from Defendants [*id*., p. 24, fn. 3].

The only fact Defendants offer in support of their jurisdictional challenge is that bitcoins are not legal tender (*see* Renewed Rule 12(b)(1) Motion, pp. 2-5, 7-9), which the Commission does not dispute.

## IV.
## ARGUMENT AND AUTHORITY

### A. The Court Has Subject Matter Jurisdiction because the BTCST Investments Are Securities.

The definitions of "security" under Section 2(a)(1) of the Securities Act of 1933 [15 U.S.C. § 77b(a)(1)] ("Securities Act") and Section 3(a)(10) of the Exchange Act of 1934 [15 U.S.C. § 77c(a)(10)] ("Exchange Act") include both "investment contract" and "note." Courts

"are not bound by legal formalism, but instead take account of the economics of the transaction" to determine whether a security exists. *Reves*, 494 U.S. at 61; *see, e.g.*, *SEC v. SG Ltd.*, 265 F.3d 42 (1st Cir. 2001) (holding virtual shares in virtual company existing only online were securities). "Congress' purpose in enacting the securities laws was to regulate *investments*, in whatever form they are made and by whatever name they are called." *Reves*, 494 U.S. at 61 (emphasis in original). The BTCST investments qualify as both investment contracts and notes and, thus, are securities.

***(1) The BTCST Investments Are Investment Contracts.***

An investment contract is any contract, transaction, or scheme involving (1) an investment of money, (2) in a common enterprise, (3) with the expectation that profits will be derived from the efforts of the promoter or a third party. *Howey*, 328 U.S. at 298-99; *see Long v. Shultz Cattle Co., Inc.*, 881 F.2d 129, 132-33 (5th Cir. 1989). In the Fifth Circuit, the second and third elements of an investment contract are met where investors are dependent upon a promoter's expertise, as the BTCST investors were dependent upon Shavers' supposed expertise in bitcoin market arbitrage, to generate the returns promised on their investments. *See Long*, 881 F.2d at 140-41.

Defendants do not contest that their investors participated in a common enterprise with the expectation of profits and, therefore, challenge jurisdiction only on the "investment of money" element of the *Howey* test, arguing bitcoins are not money. The sole basis of Defendants' argument that bitcoins are not money is that bitcoins are not legal tender. *See* Renewed Rule 12(b)(1) Motion, 2-5, 7-9. Defendants point to no authority that *Howey's* "investment of money" element may be satisfied only by legal tender, and there is none.

At the outset, the federal securities laws, the definition of "security," and the definition of "investment contract" are not read narrowly, as Defendants urge, but expansively so the laws' protections reach as many investors as possible. *See Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967) (Remedial legislation should be construed broadly to effectuate its purposes and the federal securities laws clearly fall within the category of remedial legislation). One of the central purposes of the federal securities laws is to protect investors and the definition of "security" under the securities laws necessarily determines the classes of investments and investors which will receive the laws' protections. *See id*. The Supreme Court has repeatedly emphasized the economic reality of a transaction is to govern over form and that definitions of the various types of securities should not hinge on exact and literal tests. *Williamson*, 645 F.2d at 418 (citing *Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am. v. Daniel*, 439 U.S. 551 (1979); *United Housing Found., Inc. v. Forman*, 421 U.S. 837, 848 (1975); *Tcherepnin*, 389 U.S. at 336; and *Howey*, 328 U.S. at 298). The definition of "investment contact," specifically, "embodies a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of returns." *Howey*, 328 U.S. at 299.

(a) <u>Bitcoins Are Money and Function as Money.</u>

When Shavers first challenged the Court's subject matter jurisdiction, this Court rightly held:

> It is clear Bitcoin can be used as money. It can be used to purchase goods or services, and as Shavers stated, used to pay for individual living expenses. The only limitation of Bitcoin is that it is limited to those places that accept it as currency. However, it can also be exchanged for conventional currencies, such as the U.S. dollar, Euro, Yen, and Yuan. Therefore, Bitcoin is currency or a form of money, and investors wishing to invest in BTCST provided an investment of money.

[Doc. No. 23.] The Court's holding was – and is – supported by the allegations in the Commission's Complaint and the undisputed facts in the record before it on the Commission's Motion for an Order to Show Cause, Asset Freeze, and other Ancillary Relief [Doc. No. 3]. That holding is supported further by the undisputed facts now in the record on the Commission's Motion for Summary Judgment, which show that Bitcoin is money, and also how Bitcoin functioned as money in Defendants' scheme. As detailed above, Shavers *offered and sold* the BTCST investments *for bitcoins*, soliciting *investments and deposits in bitcoins* from *investors* (whom he frequently referred to as *lenders*), on the promise of up to 7% *interest* weekly based on his *trading of bitcoin against the U.S. dollar*, and he maintained a *reserve fund of bitcoins* in his main operating *wallet* for BTCST which he used to *pay withdrawals or returns* on past investments sold.

Defendants place great weight on guidance issued by the Department of the Treasury ("Treasury"), Internal Revenue Service ("IRS"), and Texas Department of Banking, each noting that virtual currencies are not legal tender. Defendants' reliance is misplaced, not just because *Howey* requires an investment of money, not legal tender, but also because the guidance recognizes that virtual currencies, such as Bitcoin, function as money.[1]

---

[1] This reliance is misplaced also because Treasury, the IRS, and the Texas Department of Banking were not making a determination as to the legal status of Bitcoin itself, or other virtual currencies, but only how to treat them under existing laws. The guidance issued by Treasury's Financial Crimes Enforcement Network (FinCEN) clarified that administrators or exchangers of a virtual currency are money services businesses, specifically, money transmitters, subject to registration, reporting, and recordkeeping regulations. Treasury Guidance (FIN-2013-G001), p. 1. The IRS guidance states that it will treat virtual currencies, such as Bitcoin, as property for federal tax purposes. IRS Notice 2014-21, p. 2. The Texas Department of Banking determined that exchangers and transmitters of a virtual currency need not be licensed in Texas as currency exchangers or money transmitters because the definitions of "currency" and "money" under the Texas Finance Code are restricted to legal tender of the United States or another country. Texas Dep't of Banking, Supervisory Memorandum 1037 – *Regulatory Treatment of Virtual Currencies under the Texas Money Services Act* (April 3, 2014), pp. 2-3.

Treasury defines virtual currency by comparing it to "real" currency:

> In contrast to real currency, 'virtual currency' is a medium of exchange that operates like a currency in some environments, but does not have all the attributes of a real currency. In particular, virtual currency does not have legal tender status in any jurisdiction. This guidance addresses 'convertible' virtual currency [such as Bitcoin]. This type of virtual currency either has an equivalent value in real currency, or acts as a substitute for real currency.

Treasury Guidance (FIN-2013-G001) – *Application of FinCEN's Regulations to Persons Administering, Exchanging, or Using Virtual Currencies* (Mar. 18, 2013), p. 1. In fact, the essence of Treasury's guidance was to clarify that administrators or exchangers of a virtual currency are "money transmitters" subject to regulations designed to thwart money laundering.

Likewise, the IRS writes:

> '[V]irtual currency' may be used to pay for goods or services, or held for investment. Virtual currency is a digital representation of value that functions as a medium of exchange, a unit of account, and/or a store of value. In some environments, it operates like 'real' currency … but it does not have legal tender status in any jurisdiction.
>
> Virtual currency that has an equivalent value in real currency, or that acts as a substitute for real currency, is referred to as 'convertible' virtual currency. Bitcoin is one example of a convertible virtual currency. Bitcoin can be digitally traded between users and can be purchased for, or exchanged into, U.S. dollars, Euros, and other real or virtual currencies.

IRS Notice 2014-21, p. 1. As reflected in the IRS guidance, a textbook definition for money is anything that functions as a medium of exchange, a unit of account, and a store of value. *See, e.g.*, WIKIPEDIA, http://en.wikipedia.org/wiki/Money (last visited June 13, 2014).[2]

---

[2] In the alternative, Defendants argue, "even if Bitcoin is money, it is exempt from regulation by the Commission" because Section 3(a)(10) of the Exchange Act explicitly excludes "currency" from the definition of "security." *See* Renewed Rule 12(b)(1) Motion, at 10. Similarly, Defendants argue the Court lacks subject matter jurisdiction because "Bitcoin, and the trading and exchanging of Bitcoin, are not securities" subject to regulation under the Securities Act or

(b) <u>*Howey's* "Investment of Money" Requirement Can Be Satisfied by Consideration other than Money.</u>

Furthermore, "in spite of *Howey's* reference to an 'investment of money,' it is well established that cash is not the only form of contribution or investment that will create an investment contract." *Uselton v. Comm. Lovelace Motor Freight, Inc.*, 940 F.2d 564, 574 (10th Cir. 1991) (investment contract established where plaintiffs "contributed their legal right to a portion of their wages" in return for right to acquire employer's stock via employee stock option plan and participate in profit-sharing plan (citations omitted)). The "investment" under *Howey* may take the form of "goods and services," *see Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am. v. Daniel*, 439 U.S. 551, 560, n.12 (1979); or some other "exchange of value." *Uselton*, 940 F.2d at 574 (citations omitted). *See Frazier v. Manson*, 484 F. Supp. 449, 452, n.5 (N.D. Tex. 1980) (investment contract established where plaintiff did not invest money in limited partnerships but, rather, received limited partnership interests in return for services performed).

Defendants do not dispute that bitcoins have value. In fact, the undisputed facts in the record show the 700,467 bitcoins Defendants raised in principal investments from BTCST investors were quite valuable – worth more than $4.77 million at the time of the investments. Accordingly, even if the Court reconsiders its holding that bitcoin itself is a form or money, *Howey's* investment of money element is satisfied here.

---

the Exchange Act. *See id*., pp. 2-3. These arguments are off-point. The Commission has not brought this enforcement action against Defendants for the offer, sale, trading, or exchanging of bitcoins. The Commission does not allege in its Complaint, and has not taken the position in this litigation, that Bitcoin itself is a security, or that the offer, sale, trading, or exchanging of bitcoins constitutes the offer or sale of securities. Rather, the undisputed facts in the record demonstrate Defendants offered and sold interests – which qualify as both investment contracts under *Howey* and notes under *Reves* – to BTCST investors, on the promise of up to 7% interest weekly, based on Defendants' purported bitcoin market arbitrage activities.

Hence, (1) because the *Howey* test for establishing the existence of an investment contract requires an investment of money rather than legal tender; (2) because bitcoins are money and function as money; and (3) because investors exchanged value for their investment with Defendants in the form of bitcoins, the instruments Defendants offered and sold are securities. Consequently, the Court has subject matter jurisdiction.[3]

***(2) The BTCST Investments are Notes and, under Reves' "Family Resemblance" Test, Securities.***

In determining whether a note is a security, courts apply the "family resemblance" test set forth by the Supreme Court in *Reves.* The *Reves* test begins with the presumption that all notes are securities. 494 U.S. at 67. The presumption may be rebutted only by showing the note bears a strong "family resemblance" to one of several judicially-enumerated commercial or consumer notes that are not securities. *Id.*

[3] Defendants argue, under *Howey*, that "when the purchaser is motivated by a desire to use or consume the item purchased, the transaction is not a security," and, here, because the BTCST investors "had every intention of using their Bitcoin," the investments they purchased are not securities. *See* Renewed Rule 12(b)(1) Motion, p. 11-12 (internal quotation marks omitted). This argument completely distorts the applicable law. *Howey* drew a distinction between the purchase of a fee simple interest in an orange grove (not a security) and the purchase of an orange grove coupled with a contract entitling the purchaser to share in profits of a larger citrus enterprise managed by others (a security). 328 U.S at 299-300; *see*, *Long v. Schultz Cattle Co., Inc.*, 896 F.2d 85, 87 (5th Cir. 1990) (investment contract found where heads of cattle purchased together with management contract); *cf. United Housing Found., Inc. v. Forman*, 421 U.S. 837, 852-53 (1975) (no investment contract where purchasers of cooperative housing project motivated by desire to find place to live, not by financial returns on investments) (citing *Howey*, 328 U.S. at 300). Here, the undisputed facts in the record show the BTCST investors purchased interests in Defendants' operation trading bitcoin against the U.S. dollar, and that, in no way, did the BTCST investors use, consume, or occupy Defendants' purported trading operation. The fact that the BTCST investors might have used the bitcoins they invested, instead, to do something else, or enjoyed spending the bitcoins they received as purported returns on their investments, is beside the point. In fact, taking Defendants' argument to its logical conclusion would mean any investment of money would fail the *Howey* test (effectively writing the term "investment contract" out of the definition of security) so long as a successful investor would eventually spend his or her profits.

The types of notes that are not securities include a consumer financing note, a note secured by a mortgage on a home, a short-term note secured by a lien on a small business or its assets, a note evidencing a character loan to a bank customer, a short-term note secured by assignment of accounts receivable, or a note which simply formalizes an open-account debt incurred in the ordinary course of business. *Id.* at 65. The factors used to determine whether a note sufficiently resembles these "non-securities" and, thus, is not a security under the federal securities laws are: (1) the motivations that would prompt a reasonable seller and buyer into the transaction; (2) the plan of distribution of the instrument; (3) the reasonable expectations of the investing public; and (4) whether some factor, such as the existence of another regulatory scheme, significantly reduces the risk of the instrument, thereby rendering application of the securities laws unnecessary. *Id.* at 66-67. Here, the transactions between Defendants and their investors had all the earmarks of an investment, suggesting a security, and no commercial or consumer aspect, as with the judicially-enumerated instruments that are not securities.

Under the first *Reves* factor, a note is likely to be a security where a seller's purpose is to raise money for the general use of a business enterprise or to finance substantial investments, and a buyer is interested primarily in the profit the note is expected to generate. *Id.* at 66. Both of these elements are present here. The extremely favorable interest rate Defendants promised, up to 7% per week, suggests profit was the primary goal of the BTCST investors, *see id.* at 67-68; and Defendants were explicit in their solicitation of investors that they would use investors' funds to finance further investments, specifically, their trading of bitcoin against the U.S dollar.

Under *Reves'* second factor, a note is likely to be security where the plan of distribution reveals "common trading for speculation or investment." *Id.* Offers and sales to a broad segment of the public are sufficient to establish common trading, *id.* at 68; and solicitations of

individuals, as compared to sophisticated institutions, suggest common trading. *Stoiber v. SEC*, 161 F.3d 745, 750 (D.C. Cir. 1988). Defendants solicited BTCST investors in online chat rooms dedicated to Bitcoin and on the Bitcoin Forum, a publicly available website dedicated to Bitcoin where numerous bitcoin-denominated investment opportunities were posted.

*Reves'* third factor turns on whether a reasonable prospective purchaser would view the note as an investment. *Id.* at 69; *Stoiber*, 161 F.3d at 751. Here, in view of the ways Defendants marketed and described the BTCST investments, the investing public would reasonably expect that the notes were securities, and did not serve some consumer or commercial purpose.

Finally, no other regulatory agency oversees the BTCST investments and, thus, no risk-reducing factors exist to militate against a finding that the BTCST investments are securities.

The single argument Defendants make for why the BTCST investments are not notes falling within the definition of "security" is that Section 3(a)(1) of the Exchange Act excludes from the definition any note with a maturity of not more than nine months. *See* Renewed Rule 12(b)(1) Motion, p. 10. Defendants' argument is directly contradicted by well-settled law in the Fifth Circuit that the short-term exception does not apply to notes of any maturity that are investments:

> Despite the literal wording of the exception, many courts have recognized that a precise reliance on it would thwart the purposes of the securities acts, and have therefore turned to more functional approaches in deciding when a note becomes a security.
>
> We have followed one such functional approach and held that an investment note is a security while a commercial note is not a security, regardless of the literal reach of the definitional sections and the exception written into section 3(a)(10) of the 1934 Act. In *McClure v. First National Bank of Lubbock, Texas*, 497 F. 2d 490 (5th Cir. 1974), we explained:
>
> 'We realize our holding today that the Act does not apply to commercial notes of a longer duration than nine months, taken with the decisions voiding the short-term exemption as to

> investment paper, virtually writes the exemption out of the law…. Thus, the investment or commercial nature of a note entirely controls the applicability of the Act, depriving of all utility the exemption based on maturity-length.'

*Williamson*, 645 F.2d at 426-27 (citations omitted). As detailed in the discussion of *Reves'* "family resemblance" test, above, the BTCST notes are investments, not commercial or consumer notes. Therefore, the BTCST notes are securities and the Court has subject matter jurisdiction.

## B. Defendants' Motion for Reconsideration Should Be Denied.

As this Court has previously held:

> Motions to reconsider serve a very limited purpose: to permit a party to correct manifest errors of law or fact, or to present newly discovered evidence. Mere disagreement with a district court's order does not warrant reconsideration of that order. A party should not restate, recycle, or rehash arguments that were previously made. District court opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure. Rather, litigants are expected to present their strongest case when the matter is first considered.

*Verdin v. Fed. Nat'l Mortg. Ass'n*, 2012 WL 2803751, *1 (citations and quotation marks omitted).

Here, Defendants present no new facts or newly discovered evidence. The IRS and Texas Department of Banking guidance Defendants rely upon for their central argument – that Bitcoin is not legal tender and therefore the BTCST investors did not make an investment of "money" – post-date the Court's August 6, 2013 ruling. (The Treasury guidance pre-dates it and was before the Court at the time.). Nevertheless, the fact that Bitcoin is not legal tender is neither new nor remarkable. Defendants merely re-urge an argument the Court already rejected after considering facts and law that have not changed. Because, there are no new facts before the

Court, and because the Court made no manifest error of law in its prior decision, Defendants' Motion for Reconsideration should be denied.

## V.
## CONCLUSION

For the foregoing reasons, the Commission respectfully requests that the Court enter an order (a) denying Defendants' Motion for Reconsideration; (b) denying Defendants' Renewed Rule 12(b)(1) Motion; and (c) granting to the Commission all other relief to which it may be entitled at law or in equity.

Dated: June 18, 2014

Respectfully Submitted,

*/s/ Jessica B. Magee*
JESSICA B. MAGEE
Texas Bar No. 24037757
Securities and Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, TX 76102
(817) 978-6465
mageej@sec.gov

PHILIP MOUSTAKIS (PM-1748)
Securities and Exchange Commission
Brookfield Place
200 Vesey Street, Ste. 400
New York, NY 10281-1022
(212) 336-0542
moustakisp@sec.gov
*Admitted Pro Hac Vice*

ATTORNEYS FOR PLAINTIFF
SECURITIES AND EXCHANGE COMMISSION

Of Counsel:
Valerie A. Szczepanik*
Securities and Exchange Commission
Brookfield Place
200 Vesey Street, Ste. 400
New York, NY 10281-1022
(212) 336-0175
szczepanikv@sec.gov

**Not admitted in E.D. Tex.*

**CERTIFICATE OF SERVICE**

I certify that, on June 18, 2014, I electronically filed the foregoing Plaintiff's Response In Opposition to Defendants' Motion For Reconsideration of Court Opinion Doc 23 Regarding Subject-Matter Jurisdiction and Renewed Rule 12(b)(1) Motion with the Clerk of the Court, using the CM/ECF system and rely upon same for service on counsel for all parties registered with the Court as of the date of this filing.

*/s/ Jessica B. Magee*
JESSICA B. MAGEE