# UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION<br>Plaintiff<br><br>v.<br><br>TRENDON T. SHAVERS AND BITCOIN SAVINGS AND TRUST<br>Defendants | CIVIL ACTION NO. 4:13cv416<br>Judge Clark/Judge Mazzant |

## DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION OF COURT OPINION DOC 23 REGARDING SUBJECT-MATTER JURISDICTION AND RENEWED 12(b)(1) MOTION

**1. The Securities and Exchange Commission does not cite a single case supporting their argument that Bitcoin is money.**

The Securities and Exchange Commission (the "Commission" or the "Government"), continues its streak of misdirection and deception with this Court. The main question: Is Bitcoin money? In response to the *fact* that the Internal Revenue Service, the Financial Industries Regulatory Authority, the Treasury Department, the State of Texas, and even the Commission themselves say that Bitcoin isn't money, the Government offers nothing but misdirection through a series of case law citations that do not actually say what they claim. The Government, in its central supporting argument, specifically argues that the *Howey* test "may be satisfied by consideration other than money." Dkt. #60 pg. 5. However, the Government failed to cite *one* case that supports that contention.

a. *SEC v. SG Ltd.*, 265 F.3d 42 (1st Cir. 2001).

The Government claims this case says that "… virtual shares in a company existing only online were securities." Dkt. #60 pg. 10. Apparently, the Government seeks this Court to draw a correlation between a virtual share in a company and a Bitcoin. Aside from the fact that a share in a company and a Bitcoin are two completely separate forms of a virtual "thing," the Government fails to inform this Court that the main issue in *SG Ltd.* is the defendants took payment in legal tender in exchange for the virtual shares. No such transaction involving actual legal tender occurred under the allegations of this complaint.

b. *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 940 F.2d 564 (10th Cir. 1991).

The Government claims that an investment contract was formed when ". . . a person "contributed their legal right to a portion of their wages" in return for right to acquire employer's stock via employee stock option plan. . ." Dkt. #60 pg. 14. In this case, the right to "wages" was a right to collect legal tender.

c. *Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Daniel*, 439 U.S. 551, 99 S. Ct. 790, 58 L. Ed. 2d 808 (1979).

The Government claims that "goods and services" can be an investment of money. Dkt. #60 pg. 14. The Government failed to inform this Court that the consideration given wasn't actually "goods" but was a selection of legal tender, earned and due to the workers, to be paid into a pension fund instead of a pay check. *Teamsters*, 439 U.S. at 556-557. Further, the *actual* statement in the Court record was as follows: "Only in the most abstract sense may it be said that an employee "exchanges" some

portion of his labor in return for these possible benefits." The Court references, through footnote 12, the case of *United Hous. Found., Inc. v. Forman*, 421 U.S. 837, 852, 95 S. Ct. 2051, 2060, 44 L. Ed. 2d 621 (1975), which merely references the test of profits coming solely from the efforts of others and does not speak towards "money." A review of *Forman*, however, does reveal that a "security" is defined by traditional characteristics: ". . . the most common feature of stock: the right to receive 'dividends contingent upon an apportionment of profits.'" *Forman* at 851. As this Court is aware, the transactions, as alleged, were not contingent upon profits, or even an apportionment of profits, but upon a set return amount of property (not money) per day.

Finally, with regard to the Government citing *Teamsters*, this Court should know that the Supreme Court shot down the Commission's attempt to regulate the alleged security, stating that the Commission could not interpret its own statute to enlarge its authority granted to it under the statute. *Teamsters*, 439 U.S. 551 at 556 ("[T]here are limits, grounded in the language, purpose, and history of the particular statute, on how far an agency properly may go in its interpretive role. Although these limits are not always easy to discern, it is clear here that the SEC's position is neither longstanding nor even arguably within the outer limits of its authority to interpret these Acts.")

### d. *Frazier v. Manson*, 484 F. Supp. 452 n.5 (N.D. Tex. 1980).

This case, a circuit court case from 1980, was an order on a motion for summary judgment. The Government claims it means that "investment contract established where plaintiff did not invest money in limited partnerships but, rather, received limited partnership interests in return for services performed." Dkt. #60 pg. 14. However, this case does not actually state the rule the Government claims. This case found that there

was not a security.

2. **The alleged transactions are notes less than nine months and not subject to Commission enforcement**

The Government, finally, agrees that the transactions involved lending, and that the transactions were notes. Dkt. #60 pg. 17. The Government does not dispute that the notes were short-term notes, but instead claims that the Fifth Circuit disregards federal statutory law and should disregard it in this case claiming that the "notes" were investments. Dkt. #60 pg. 17 ("well-settled law in the Fifth Circuit that the short-term exception does not apply to notes of any maturity that are investments. . .") *citing McClure v. First Nat. Bank of Lubbock, Tex.*, 497 F.2d 490, 494 (5th Cir. 1974). Properly, in *McClure*, the court dismissed the case on a subject-matter jurisdiction when it could not find that a purchase or sale of security occurred within the meaning of the Securities Exchange Act. *Id.* at 491.

The Government argues that since 1974, short term notes are not actually exempted from the Commission's power. However, the issue is not as well-settled as the Government would have this Court believe. In *Reeves v. Ernst & Young*, 494 U.S. 56 (1990), the Supreme Court acknowledged the existence of a "less than nine-month" exemption. The Court did not examine the nine-month exemption in *Reeves* because it determined the notes were longer than nine months in duration and therefore the exemption did not apply. The Court did *not* say that the exemption did not exist for notes that were investments – as the Government would have this Court believe. *Id.* 70-73.

A court cannot omit or add to the plain meaning of a statute. *See Michigan v. Bay Mills Indian Community*, 134 S. Ct. 2024, 2033 (May 27, 2014) (Supreme Court does not

revise legislation just because the text as written creates an apparent anomaly as to some subject it does not address) *citing CSX Transp., Inc. v. Alabama Dept. of Revenue,* 131 S. Ct. 1101, 1113-1114 (2011) ("Congress wrote the statute it wrote" – a statute going so far and no further. *Bay Mills*, 134 S. Ct. at 2033-2034; *Adam Sommerrock Holzbau, GmbH v. United States*, 866 F.2d 427, 429 (Fed. Cir. 1989) *citing, Doski v. M. Goldseker Co.*, 539 F.2d 1326, 1332 (4th Cir. 1976) ("impermissible to construe statute "on the basis of a mere surmise as to what the Legislature intended and to assume that it was only by inadvertence that it failed to state something other than what it plainly stated."); *De Soto Sec. Co. v. C.I.R.,* 235 F.2d 409, 411 (7th Cir. 1956) ("Courts have no right, in the guise of construction of an act, to either add words to or eliminate words from the language used by congress.").

## CONCLUSION

For the forgoing reasons, the Court should grant Defendants' Motion to Dismiss for Subject-Matter Jurisdiction.

Respectfully submitted and moved this 24th day of June, 2014,

                        /s/ *Franklin Jason Seibert*
                        F. Jason Seibert (OSB 095009)
                        FJ SEIBERT, LLC – A LAW OFFICE
                        960 Liberty Street SE Suite 150
                        Salem, Oregon 97302
                        (503) 480-0212
                        jason@seibert-law.com
                        Attorney for Defendants
                        *Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

I certify that, on this 24th day of June, 2014, I electronically filed the foregoing DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION OF COURT OPINION DOC 23 REGARDING SUBJECT-MATTER JURISDICTION AND RENEWED 12(b)(1) MOTION with the Clerk of the Court for the Eastern District of Texas, Sherman Division, using the CM/ECF system, on all parties registered to receive service on the date of the filing.

/s/*Franklin Jason Seibert*
F. Jason Seibert (OSB 095009)
FJ SEIBERT, LLC – A LAW OFFICE
960 Liberty Street SE Suite 150
Salem, Oregon 97302
(503) 480-0212
jason@seibert-law.com
Attorney for Defendants
*Admitted Pro Hac Vice*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE CV-7 (i)
## CERTIFICATE OF CONFERENCE

The forgoing document, DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION OF COURT OPINION DOC 23 REGARDING SUBJECT-MATTER JURISDICTION AND RENEWED 12(b)(1) MOTION, did not require conferral prior to filing pursuant to Local Rule CV-7(i)(1) – a motion to dismiss. Regardless, the parties conferred on the issue, specifically of Bitcoin's development across several regulatory agencies since the issuance of DOC 23 and the parties could not come to an agreement on the substantive effect of the guidance. As a result, the forgoing document is opposed.

/s/*Franklin Jason Seibert*
F. Jason Seibert (OSB 095009)
FJ SEIBERT, LLC – A LAW OFFICE
960 Liberty Street SE Suite 150
Salem, Oregon 97302
(503) 480-0212
jason@seibert-law.com
Attorney for Defendants
*Admitted Pro Hac Vice*