# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE | § | |
| COMMISSION | § | |
| | § | |
| V. | § | CASE NO. 4:13-CV-416 |
| | § | Judge Mazzant |
| TRENDON T. SHAVERS and BITCOIN | § | |
| SAVINGS AND TRUST | § | |

## ORDER GRANTING IN PART AND DENYING IN PART
## DEFENDANTS' MOTION FOR RECONSIDERATION

Pending before the Court is Defendants' Motion for Reconsideration of Court Opinion [Addressing the Court's Subject-Matter Jurisdiction] (Dkt. #46). In the motion, Defendants request that the Court reconsider its prior decision finding that it has subject-matter jurisdiction over the present case (Dkt. #23), and, after reconsideration, find that this Court does not have jurisdiction. After considering the motion, the responses, the oral argument of counsel for both parties, and the relevant pleadings, the Court finds Defendants' motion is granted in part and denied in part.

## BACKGROUND

This case was filed on July 23, 2013, against Defendants Trendon T. Shavers ("Shavers") and Bitcoin Savings and Trust ("BTCST") (Dkt. #1). The question currently before the Court is whether or not it has subject-matter jurisdiction over this action pursuant to Sections 20 and 22 of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. §§ 77t and 77v] and Sections 21 and 27 of the Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. §§ 78u and 78aa].

On August 5, 2013, the Court conducted a hearing at which Shavers orally challenged the Court's subject-matter jurisdiction over this case (Dkt. #21). At that time, Shavers appeared *pro se*, and the Court considered his arguments, finding that the Court had subject-matter jurisdiction

over this action (Dkt. #23). At the hearing, Shavers argued primarily that the BTCST investments are not securities because Bitcoin is not money, and Bitcoin is not, and cannot be, regulated by the United States. Shavers also argued that his transactions were all Bitcoin transactions, and that no money ever exchanged hands. The Securities and Exchange Commission ("SEC") argued that the BTCST investments met the definition of a "security" because they were both investment contracts and notes.

In relevant part, the Court found that the BTCST investments met the definition of an investment contract because the investments were: (1) an investment of money, (2) in a common enterprise, (3) with the expectation that profits will be derived from the efforts of the promoter or a third party. *SEC v. W.J. Howey & Co*., 328 U.S. 293, 298-99 (1946); *Long v. Shultz Cattle Co*, 881 F.2d 129, 132 (1989). The Court noted that Bitcoin could be used as money or currency, there was a common enterprise in that investors were dependent on Shavers' expertise in Bitcoin markets and his local connections to gain the expected interest, and that the investors expected profits to be obtained from the efforts of Shavers.

Shavers is now represented by counsel, and on June 5, 2014, Defendants' Motion for Reconsideration of Court Opinion Doc 23 (Dkt. #46) was filed, along with the Declaration of Franklin Jason Seibert in Support of Defendants' Response to Order to Show Cause Why Rule 37 Sanctions Should Not Be Imposed (Dkt. #47).[1] On June 18, 2014, the SEC filed its response (Dkt. #60). On June 24, 2014, Defendants filed their reply (Dkt. #62). On July 11, 2014, the SEC filed a Notice of Supplemental Authority in Support of Plaintiff's Response in Opposition to Defendants' Renewed 12(b)(1) Motion (Dkt. #67). On July 14, 2014, the Court held a hearing on this matter where it heard oral argument from counsel for both the SEC and Defendants (Dkt.

---

[1] This document contains Defendants' evidence in support of its position that other federal agencies and/or legislatures have not considered Bitcoin money.

#69).  In addition, the parties consented to proceed before the undersigned for trial (Dkt. #71,

#72).  With permission of the Court, on August 1, 2014, Defendants filed a Supplemental Filing

to Motion for Reconsideration of Court Opinion Doc 23 Regarding Subject-Matter Jurisdiction

and Renewed Rule 12(b)(1) Motion (Dkt. #74).  On August 22, 2014, the SEC filed an

Unopposed Motion for Leave to Submit Supplemental Authority in Support of Plaintiff's

Response in Opposition to Defendants' Renewed 12(b)(1) Motion (Dkt. #75).[2]  This motion was

granted by the Court (Dkt. #76).

The factual allegations underlying this case have remained the same throughout, and are

undisputed by Defendants.  Shavers is an individual residing in McKinney, Texas, and is the

founder and operator of BTCST, formerly known as First Pirate Savings & Trust.  According to

the facts stated by the SEC,[3] Shavers made a number of solicitations aimed at enticing lenders to

invest in Bitcoin-related investment opportunities.

Beginning in November of 2011, Shavers began advertising that he was in the business of

"selling Bitcoin to a group of local people" and offered investors up to 1% interest daily "until

either you withdraw the funds or my local dealings dry up and I can no longer be profitable"

(Dkt. #3 at 3).  During the relevant period, Shavers obtained at least 700,467 Bitcoin in principal

investments from BTCST investors, or $4,592,806 in U.S. dollars, based on the daily average

price of Bitcoin when the BTCST investors purchased their BTCST investments (Dkt. #3 at 4).

The BTCST investors who suffered net losses (compared to investors who received more in

withdrawals and purported interest payments than they invested in principal), collectively lost

263,104 Bitcoin in principal, that is $1,834,303 based on the daily average price of Bitcoin when

---

[2] Defendants indicated that they were unopposed to the filing of the motion for leave to submit supplemental authority, but object to the relevance of the supplemental authority.
[3] These facts were not challenged at the hearings on August 5, 2013, or July 14, 2014.

they purchased their BTCST investments, or in excess of $23 million based on currently available Bitcoin exchange rates. *Id.*

## LEGAL STANDARD

*A. Motion to Reconsider*

A motion seeking "reconsideration" may be construed under either Federal Rule of Civil Procedure 59(e) or 60(b). *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n.1 (5th Cir. 2004); *see also Milazzo v. Young*, No. 6:11-cv-350-JKG, 2012 WL 1867099, at *1 (E.D. Tex. May 21, 2012). Such a motion "'calls into question the correctness of a judgment.'" *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004) (quoting *In Re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)).

"If a motion for reconsideration is filed within 28 days of the judgment or order of which the party complains, it is considered to be a Rule 59(e) motion; otherwise, it is treated as a Rule 60(b) motion." *Milazzo*, 2012 WL 1867099, at *1; *see Shepherd*, 372 F.3d at 328 n.1; *Berge Helene Ltd. v. GE Oil & Gas, Inc.*, No. H-08-2931, 2011 WL 798204, at *2 (S.D. Tex. Mar. 1, 2011)). A Rule 59(e) motion is "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet,* 367 F.3d at 479 (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). "Rule 59(e) 'serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence.'" *Id.* (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)). "Relief under Rule 59(e) is also appropriate when there has been an intervening change in the controlling law." *Milazzo*, 2012 WL 1867099, at *1 (citing *Schiller v. Physicians Resource Grp.*, 342 F.3d 563, 567 (5th Cir. 2003)). "Altering, amending, or reconsidering a judgment is an extraordinary remedy that courts should use sparingly." *Id.*

(citing *Templet*, 367 F.3d at 479). "The alternative, Federal Rule of Civil Procedure 60(b)(6) states, 'On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: […] (6) any other reason that justifies relief." *Id.*

## B. Motion to Dismiss for Lack of Subject-Matter Jurisdiction

Defendants move to dismiss based on Federal Rule of Civil Procedure 12(b)(1). The Court has subject-matter jurisdiction over those cases arising under federal law. U.S. Const. Art. III § 2, cl. 1; 28 U.S.C. § 1331. A case arises under federal law if the complaint establishes that federal law creates the cause of action or the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law. *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 689-90 (2006).

A motion under Federal Rule of Civil Procedure 12(b)(1) should be granted only if it appears beyond doubt that Plaintiff cannot prove a plausible set of facts in support of its claim. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007)). The Court may find a plausible set of facts by considering: "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Lane,* 529 F.3d at 557 (quoting *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). The Court will accept all well-pleaded allegations in the complaint as true, and construe those allegations in a light most favorable to Plaintiff. *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994). The party asserting jurisdiction bears the burden of proof for a 12(b)(1) motion to dismiss. *Ramming*, 281 F.3d at 161. "A case is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or

constitutional power to adjudicate the case." *CleanCOALition v. TXU Power*, 536 F.3d 469, 473 (5th Cir. 2008) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

## ANALYSIS

### A. Defendants' Motion to Reconsider

Defendants request that this Court reconsider its prior ruling regarding subject-matter jurisdiction in this case. Although Defendants state that the motion is brought pursuant to Federal Rule of Civil Procedure 54(b), this is not an appropriate mechanism for a motion to reconsider in this case. Rule 54(b) involves the entry of judgment on multiple claims or involving multiple parties, and does not address motions to reconsider orders of the Court. However, as stated above, such motion may be brought pursuant to Rule 59(e) or Rule 60(b). "If a motion for reconsideration is filed within 28 days of the judgment or order of which the party complains, it is considered to be a Rule 59(e) motion; otherwise, it is treated as a Rule 60(b) motion." *Milazzo*, 2012 WL 1867099, at *1. In this case, Defendants' filed their motion for reconsideration 303 days after the undersigned entered its Memorandum Opinion Regarding the Court's Subject Matter Jurisdiction (Dkt. #23; #46). This motion will be treated as a Rule 60(b) motion.

Rule 60(b) provides, "the court may relieve a party… from a final judgment, order, or proceeding for the following reasons:
  (1) mistake, inadvertence, surprise, or excusable neglect;
  (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
  (3) fraud…, misrepresentation, or misconduct by an opposing party;
  (4) the judgment is void;
  (5) the judgment has been satisfied, release or discharged…; or
  (6) any other reason that justifies relief.

Defendants contend that the order of the Court should be reconsidered due to the Court's improper reliance "upon a second-year law student's law review article" and "new guidance from federal and state agencies regarding the nature of Bitcoin" (Dkt. #46 at 2). The SEC contends that Defendants present no new facts or newly discovered evidence, and that the Court made no manifest errors of law in its decision. The SEC argues that Defendants' motion should be denied because "Defendants merely re-urge an argument the Court already rejected after considering facts and law that have not changed" (Dkt. #60 at 14).

As a preliminary note, the Court did not rely solely, or even primarily, on a law review article written by a second-year law student in its opinion (*See* Dkt. #23 at 1-2 (citing Derek A. Dion, *I'll Glady Trade You Two Bits on Tuesday for a Byte Today: Bitcoin, Regulating Fraud in the E-Conomy of Hacker-Cash*, 2013 U. Ill. J.L. Tech & Pol'y 165, 167 (2013)). The portions of the law review article cited by the Court were in reference to the definition and description of Bitcoin. In fact, at the hearing, Defendants' counsel stated that he agreed with the definition provided by the Court as taken from the law review article in question. However, the Court does acknowledge that "[c]hallenges to subject-matter jurisdiction can of course be raised at any time prior to final judgment." *Groupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 571 (2004) (citation omitted). Thus, under Rule 60(b)(6), which allows the Court to reconsider an order for "any other reason that justifies relief," the Court finds Defendants' motion to reconsider is granted. The Court will now turn to the question of subject-matter jurisdiction.

B. *Defendants' Motion to Dismiss for Lack of Subject-Matter Jurisdiction*

The definition of "security" under Section 2(a)(1) of the Securities Act and Section 3(a)(10) of the Exchange Act is "any note, stock, treasury stock, security future, security-based swap, bond…[or] investment contract…" 15 U.S.C. § 77b; 15 U.S.C. § 77c(a)(10). The SEC

contends that the BTCST investments qualify as both investment contracts and notes and, thus, are securities. Defendants contend that the BTCST investments are neither investment contracts, nor notes, and are not subject to the jurisdiction of this Court.

Defendants frame the main question currently facing the Court as: "Is Bitcoin Money?"; however, this is not the main issue before the Court. The main question is whether the BTCST investments in this case meet the definition of a "security," specifically, are the BTCST investments an "investment contract" and/or a "note" as defined by relevant statutes and case law? While a discussion of whether the BTCST investments meet the definition of an investment contract as has been defined by law may entail a discussion of whether Bitcoin is money – this is not the main question for the Court to decide. It is also worth pointing out that the Court has not been asked to decide whether Bitcoin itself is a security, or whether the offer, sale, trade, or exchange of bitcoins constitutes the offer or sale of securities. Again, the question before the Court involves the particular BTCST investments offered by Defendants to BTCST investors.

An investment contract is any contract, transaction, or scheme involving (1) an investment of money, (2) in a common enterprise, (3) with the expectation that profits will be derived from the efforts of the promoter or a third party. *Howey*, 328 U.S. at 298-99; *Long,* 881 F.2d at 132. Defendants do not contest that their investors participated in a common enterprise with the expectation of profits, and challenge jurisdiction only on their contention that bitcoins are not money and cannot represent an investment of money.

In *Howey*, the Supreme Court determined that "an investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a

third party, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise." 328 U.S. at 298-99.  The Supreme Court noted that this definition of an investment contract permitted the "fulfillment of the statutory purpose of compelling full and fair disclosure relative to the issuance of the many types of instruments that in our commercial world fall within the ordinary concept of a security."  *Id*. at 299 (internal quotations and citations omitted).  The Supreme Court went on to say that this definition "embodies a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits."  *Id*.  In *Howey*, the Supreme Court considered investments of individuals in a small tract of land used as a citrus grove, and found that they were offered more than just the sale of land, but were enticed by the opportunity to contribute money and to share in the profits of a large citrus fruit enterprise.  *Id*.  The Supreme Court concluded the following:

> [A]ll the elements of a profit-seeking business venture are present here.  The investors provide the capital and share in the earnings and profits; the promoters manage, control and operate the enterprise.  It follows that the arrangements whereby the investors' interests are made manifest involve investment contracts, regardless of the legal terminology in which such contracts are clothed.

*Id*. at 300.  Thus, it is clear that the Supreme Court in *Howey* did not present a single, determinative factor in defining "investment contract," but rather looked to the investment package as a whole, including the ways in which the investment was marketed to investors.

Defendants argue that in order to satisfy the definition of an "investment contract," bitcoins must be considered money, which Defendants appear to equate to legal tender.  The Court disagrees.  "[I]t is well established that cash is not the only form of contribution or investment that will create an investment contract."  *Uselton v. Commercial Lovelace Motor*

*Freight, Inc*., 940 F.2d 564, 574 (10th Cir. 1991). In fact, the "investment" may take the form of "goods and services," or some other "exchange of value." *Id*. (internal citations omitted). Indeed, case law from around the country supports this proposition. *See, e.g., Int'l Brotherhood of Teamsters v. Daniel*, 439 U.S. 551 (1979) (indicating that an employee benefit plan could be a security but finding that the particular one in question was not); *Uselton*, 940 F.2d at 574 (voluntary, contributory employee plan was a security); *SEC v. Int'l Heritage, Inc*., 4 F. Supp. 2d 1378, 1382-1383 (N.D. Ga. 1998) (labor can satisfy the investment requirement); *Feret v. Corestates Fin. Corp*., No. 97-6757, 1998 WL 426560, at *13-*14 (E.D. Pa. July 27, 1998) (employee stock option plan was a security); *Frazier v. Manson,* 484 F. Supp. 449, 452 n.5 (N.D. Tex. 1980) (investment contract established where plaintiff did not invest money in limited partnerships, but received limited partnership interest in return for services performed); *SEC v. Addison*, 194 F. Supp. 709 (N.D. Tex. 1961) (investment of services can trigger securities laws); *but see, Peyton v. Morrow Electronics, Inc*., 587 F.2d 413 (9th Cir. 1978) (investment of services did not support the existence of a security); *cf. Matassarin v. Lynch*, 174 F.3d 549 (5th Cir. 1999) (mandatory, non-contributory stock option plan was not a security).

The cases reviewed by the Court indicate that the primary consideration in determining whether the investment requirement for finding a security has been met is whether the purchaser was required to give up something of value in exchange for the promised consideration. The determining factor is whether an investor "chose to give up a specific consideration in return for a separable financial interest with the characteristics of a security." *Teamsters*, 439 U.S. at 559. Without yet turning to the question of whether Bitcoin is money, the Court is easily able to determine that Bitcoin constitutes something of value. Defendants argue that Bitcoin is a value transport protocol and carries with it only the value that someone is willing to pay for the

Bitcoin. The Court finds that the actual value of Bitcoin, or whether the value of Bitcoin is measured in U.S. dollars, Euros, or some other way of measuring value, is irrelevant. Further, contrary to Defendants' assertion, there is no requirement that the "investment of money" prong must be satisfied by an investment of cash, or currency that amounts to legal tender. In *Teamsters*, the Supreme Court specifically stated "[t]his is not to say that a person's 'investment,' in order to meet the definition of an investment contract, must take the form of cash only, rather than of goods or services." *Id.* at 560 n.12. Even if the Court accepts Defendants' contention that Bitcoin is more akin to property rather than money, Bitcoin still satisfies the "investment of money" prong of the *Howey* test. For example, in order to participate in Defendants' investment scheme, investors were required to give up a specific consideration, Bitcoin,[4] in return for the promised consideration, which was the 7% return on their investment brought about by the efforts of Shavers. As noted above, the definition of "investment contract" set out by the Supreme Court "embodies a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of returns." *Id.* at 299. Again, the Court finds that the BTCST investments in this case meet the definition of "investment contract" set forth in *Howey*.

Turning now to the question of whether Bitcoin is money, the Court first looks to the ordinary meaning of the word money. Defendants assert that in order to constitute money, Bitcoin must be considered legal tender. There is simply no evidence to support this contention,

---

[4] The Court also notes that, according to Defendants, there are three ways of obtaining Bitcoin. The first is to "mine" the Bitcoin using a complicated computer algorithm, which generates the Bitcoin. Defendants note that this takes a substantial amount of financial investment to obtain the computer equipment necessary, as well as the energy needed to power the computers. Defendants also note that this process will become more difficult the more bitcoins are mined. The second way to obtain Bitcoin is to purchase it. The third way to obtain Bitcoin is to sell something and accept payment in Bitcoin. All three ways of obtaining Bitcoin require an investment of money, as the process of "mining" Bitcoin requires money to purchase the needed equipment, purchasing Bitcoin through an exchange or otherwise requires a forms of currency in exchange for Bitcoin, and to obtain an item to sell and then accepting payment in Bitcoin requires the initial investment of obtaining the merchandise.

and the cases cited above demonstrate that there can be an investment contract even when there is no exchange of legal tender. The SEC relies on the following definition of money: "anything that functions as a medium of exchange, a unit of account, and a store of value" (Dkt. #60 at 9 (citing WIKIPEDIA, http://en.wikipedia.org/wiki/Money (last visited June 13, 2014)). Merriam-Webster's Dictionary similarly defines money as: "Something generally accepted as a medium of exchange, a measure of value, or a means of payment." MERRIAM-WEBSTER'S DICTIONARY, http://www.merriam-webster.com/dictionary/money (last visited August 25, 2014). The SEC and Defendants agree that Bitcoin is a measure of value, can be used as a means of payment, and, while perhaps not generally accepted as a medium of exchange, is accepted by some vendors as a medium of exchange.

Defendants urge the Court to consider IRS Notice 2014-21, which they assert finds that Bitcoin is property – not money. The IRS statement refers to Bitcoin as a "convertible virtual currency," and acknowledges that Bitcoin can operate "like 'real' currency – i.e., the coin and paper money of the United States or of any other country that is designated as legal tender… but it does not have legal tender status in any jurisdiction" (Dkt. #47, Ex. 2 at 1). The IRS Notice states that for federal tax purposes, virtual currency is treated as property. *Id*. at 2. However, in reporting virtual currency to the IRS, "a taxpayer who receives virtual currency as payment for goods or services must, in computing gross income, include the fair market value of the virtual currency, measured in U.S. dollars." *Id*. at 2-3. "[W]hen a taxpayer successfully 'mines' virtual currency, the fair market value of the virtual currency as of the date of receipt is includible in gross income." *Id*. at 4. The IRS guidance indicates that Bitcoin received by "mining" or as payment to an independent contractor is taxable as self-employment income, and Bitcoin paid to an employee by an employer constitutes wages and is subject to federal income tax withholding,

and other federal taxes.  *Id.* at 4-5.  Bitcoins received as wages must be reported on Form W-2.  *Id.* at 5.  However, the IRS Notice did not make any determinations about whether bitcoins are money or not, only that for federal tax purposes, bitcoins are to be treated as property.  At oral argument, the SEC noted that there is nothing inconsistent with the IRS treating bitcoins in this manner, since the form requires the filer to choose one of two options – whether the person is dealing with a foreign currency exchange or a property.  In twenty-three places throughout the IRS Code, money is referred to as property.  Thus, the Court finds no reason to conclude, based on IRS Notice 2014-21, that Bitcoin is not money.  In fact, the IRS definition and guidance seem to point the Court towards the similarities between money and Bitcoin for federal tax purposes.

Defendants next rely on the Department of the Treasury Financial Crimes Enforcement Network Guidance FIN-2013-G001, which states, "[i]n contrast to real currency, 'virtual' currency is a medium of exchange that operates like a currency in some environments, but does not have all the attributes of real currency.  In particular, virtual currency does not have legal tender status in any jurisdiction" (Dkt. #47, Ex. 3 at 1).  This guidance goes on to clarify that administrators or exchangers of a virtual currency are money services businesses, specifically, money transmitters, subject to registration, reporting, and record-keeping regulations.  Again, this guidance demonstrates that virtual currencies, like Bitcoin, are being treated like money for purposes of federal regulation.

Turning next to the Texas Department of Banking, Defendants argue that the State of Texas rejected Bitcoin as money or an enforceable claim in court.  However, the Texas Department of Banking actually determined that exchangers and transmitters of a virtual currency need not be licensed in Texas as currency exchangers or money transmitters because the definitions of "currency" and "money" under the Texas Finance Code are restricted to the

legal tender of the United States or another country (Dkt. #47, Ex. 4 at 2-3). This makes sense, given the legislative definition of "currency" and "money" to which the Texas Department of Banking is restricted. In addition, Defendants point to California Assembly Bill 129 in support of their contention that Bitcoin is not currency, but property. California Assembly Bill 129 "makes clarifying changes to current law to ensure that various forms of alternative currency such as digital currency, points, coupons, or other objects of monetary value do not violate the law when those methods are used for the purchase of goods and services or the transmission of payments" (Dkt. #74, Ex. 1 at 1). This legislation puts digital or cryptocurrencies in the same category as "community currencies." Defendants compare Bitcoin to Starbucks Rewards points or airline miles. After looking at these various treatments of Bitcoin, the Court finds that these various legislatures and agencies are characterizing Bitcoin as best they can within the framework of the regulations they have without further legislative guidance regarding the treatment of Bitcoin. However, none of these sources classified Bitcoin or gave an opinion regarding its treatment for purposes of Federal Securities laws.

Finally, since this Court's prior opinion on subject-matter jurisdiction, a few other courts have recognized that Bitcoin is money with regard to various federal statutes. *See, e.g., United States v. Ulbricht*, No. 14-CR-68 KBF, 2014 WL 3362059 (S.D.N.Y. 2014) (concluding that Bitcoin is money within the context of the federal anti-money laundering statute); *United States v. Faiella*, No. 14-CR-243 JSR, 2014 U.S. Dist. LEXIS 116114 (S.D.N.Y. Aug. 18, 2014) (concluding that Bitcoin is money within the context of 18 U.S.C. § 1960 and the United States' allegations that the defendant operated as an unlicensed money transmitting business).[5]

---

[5] As noted above, Defendants object to the relevance of the district court's opinion in *Faiella* submitted by the SEC as supplemental authority (*See* Dkt. #75). Defendants' objection is overruled, and the Court notes that it cited both the opinion in *Ulbricht* and *Faiella* for the simple proposition that other courts have found that Bitcoin is money in the context of other federal statutes not at issue in this case.

Based on the foregoing, the Court finds that Bitcoin has a measure of value, can be used as a form of payment, and is used as a method of exchange. As such, the Bitcoin investments in this case can satisfy the "investment of money" prong set out by the Supreme Court in *Howey*. While the Court recognizes that Bitcoin does not have legal tender status, the Court notes that legal tender status is not required to establish that the investments at issue are investment contracts. Thus, the Court finds that the BTCST investments in this case are "investment contracts" and "securities" for purposes of federal securities law. Thus, the Court finds that it has subject-matter jurisdiction over this case.

Defendants next argue that if Bitcoin is money, then it is exempt from regulation by the Commission. However, this argument misstates the central finding that the Court must make, which is whether the BTCST investments in this case were securities. No one is arguing that Bitcoin itself is the security at issue in this case, as noted by the SEC in its brief. Thus, this argument does not apply.

Defendants also argue that, under *Howey*, "when the purchaser is motivated by a desire to use or consume the item purchased, the transaction is not a security," and, thus, because the BTCST investors had every intention of using their Bitcoin, the investments they purchased are not securities (Dkt. #46 at 11-12). As the SEC points out, *Howey* drew a distinction between the purchase of a fee simple interest in an orange grove (not a security) and the purchase of an orange grove coupled with a contract entitling the purchaser to share in profits of a larger citrus fruit enterprise managed by others (a security). 328 U.S. at 299-300; *see Long,* 896 F.2d at 87 (investment contract found where heads of cattle purchased together with management contract); *cf. United Housing Found., Inc. v. Forman*, 421 U.S. 837, 852-53 (1975) (no investment contract where purchasers of cooperative housing project motivated by desire to find place to live, not by

financial returns on investments).  Here, the BTCST investors purchased interests in Defendants' operation trading bitcoins against the U.S. dollar, and did not use, consume, or occupy Defendants' trading operation.  Defendants' investors were primarily interested in the return on their investments and any financial gain, and the fact that they may have later used or consumed their bitcoins is irrelevant.  Further, accepting Defendants' argument would mean that any investment of money would fail the *Howey* test if an investor would eventually spend the profits made from his or her investments. Thus, the Court finds Defendants' argument unpersuasive.

**CONCLUSION**[6]

Based on the foregoing, the Court finds that Defendants' Motion for Reconsideration of Court Opinion Doc 23 (Dkt. #46) is **GRANTED IN PART** and **DENIED IN PART**.  The Court grants Defendants' motion to reconsider its prior decision on subject-matter jurisdiction, but denies Defendants' 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction.

**IT IS SO ORDERED.**
**SIGNED this 26th day of August, 2014.**

AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE

---

[6] The SEC also argues that the BTCST investments are notes; however, since the Court determined that the BTCST investments at issue are "investment contracts," this Court has subject-matter jurisdiction over this case.  The Court will not address whether the BTCST investments are also notes.