# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION § § § | |
| V. § § | CASE NO. 4:13-CV-416 |
| § | Judge Mazzant |
| TRENDON T. SHAVERS and BITCOIN SAVINGS AND TRUST § § | |

### ORDER DENYING DEFENDANTS' EMERGENCY MOTION TO DISSOLVE ASSET FREEZE

Pending before the Court is Defendants' Emergency Motion to Dissolve Asset Freeze (Dkt. #61). After reviewing the motion and the response, the Court finds the motion is denied.

### BACKGROUND

On August 5, 2013, the Court held a hearing regarding the Commission's Emergency Motion for an Order to Show Cause, Asset Freeze, and Other Ancilliary Relief (Dkt. #3; Dkt. #21). Also, on August 5, 2013, the court entered an Order Freezing Assets and Granting Other Ancilliary Relief (Dkt. #22). Defendants now ask the Court to dissolve the asset freeze because (1) the Court lacked authority to order the injunctive relief sought by the Commission; (2) the Court's order lacks sufficient findings of fact and conclusions of law; and (3) the Court has not yet determined if it has subject-matter jurisdiction over this action.

At the hearing, the Commission's evidence revealed that Shavers is an individual residing in McKinney, Texas, and is the founder and operator of Bitcoin Savings and Trust ("BTCST"), formerly known as First Pirate Savings & Trust.[1] According to the facts stated by the

---

[1] The following facts are also set forth in the Court's Memorandum Opinion Regarding the Court's Subject Matter Jurisdiction (Dkt. #23), and incorporated by reference into the Order Freezing Assets (Dkt. #22).

1

Commission,[2] Shavers made a number of solicitations aimed at enticing lenders to invest in Bitcoin-related investment opportunities.

Beginning in November of 2011, Shavers began advertising that he was in the business of "selling Bitcoin to a group of local people" and offered investors up to 1% interest daily "until either you withdraw the funds or my local dealings dry up and I can no longer be profitable" (Dkt. #3 at 3). During the relevant period, Shavers obtained at least 700,467 Bitcoin in principal investments from BTCST investors, or $4,592,806 in U.S. dollars, based on the daily average price of Bitcoin when the BTCST investors purchased their BTCST investments (Dkt. #3 at 4). The BTCST investors who suffered net losses (compared to investors who received more in withdrawals and purported interest payments than they invested in principal), collectively lost 263,104 Bitcoin in principal, that is $1,834,303 based on the daily average price of Bitcoin when they purchased their BTCST investments, or in excess of $23 million based on currently available Bitcoin exchange rates. *Id*. The Commission's evidence indicated that Shavers made numerous misrepresentations to investors regarding the nature of the investments and that he defrauded the investors.

## ANALYSIS

As a preliminary matter, Defendants provide no evidence supporting their motion, nor do they argue changed circumstances or additional facts not previously available to the Court. In moving the Court to dissolve a preliminary injunction it previously entered, "the moving party must make a strong evidentiary showing." *Fiber Sys. Int'l, Inc. v. Applied Optical Sys., Inc.*, No. 2:06-CV-473, 2009 WL 8590962, at *2 (E.D. Tex. June 24, 2009) (citing *United States v. Swift & Co.*, 286 U.S. 106 (1932) (requiring "nothing less than a clear showing of grievous wrong

---

[2] These facts were not challenged at the hearing on August 5, 2013, and remain undisputed at this time.

evoked by new and unforeseen conditions…")). There has been no such showing in this case, and for this reason, the Court finds the motion should be denied.

Defendants first contend that the Court lacked the authority to issue the asset freeze in this action because district courts do not have the authority to enter a preliminary asset freeze where a plaintiff seeks remedies in law, specifically money damages (*See* Dkt. #61 at 2-5 (citing *Newby v. Enron Corp*. ("*Enron*"), 188 F. Supp. 2d 684 (S.D. Tex. 2002); *Groupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc*., 527 U.S. 308 (1999); *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212 (1945)). While it appears that Defendants are correct in asserting that a district court cannot enter a preliminary asset freeze in cases where monetary damages are the only damages being sought, it also appears that Defendants have ignored relevant case law that holds that if a plaintiff seeks equitable remedies, district courts have the authority to preliminarily freeze assets to preserve the status quo, to ensure funds will be available to satisfy any final judgment, and to guard against defendants dissipating assets. *See Animale Grp., Inc. v. Sunny's Perfume Inc*., 256 F. App'x 707, 709 (5th Cir. 2007) (citing *Deckert v. Independence Shares Corp*., 311 U.S. 282 (1940)). There is a clear distinction in the case law between money damages, a legal remedy, and equitable remedies sought by the Commission in this case. In fact, the *Enron* court itself noted that when a plaintiff asserts an equitable claim to assets of the defendant, a court may invoke equity to preserve the status quo, pending judgment, where the preliminary relief furthers the court's ability to grant the final relief requested. *See Enron*, 188 F. Supp. 2d at 694-6. Here, the Commission seeks equitable relief that includes an accounting of Defendants' use of BTCST investors' funds as well as disgorgement of the illicit gains from their alleged fraud. There is a clear nexus here between the asset freeze and the remedies sought in this action. *Id*.; *see also SEC v. Halek*, 537 F. App'x 576 (5th Cir. 2013) (disgorgement is

equitable); *SEC v. Seghers*, 298 F. App'x 319, 336 (5th Cir. 2008) (same). Although the Commission is also seeking civil monetary penalties, which are a legal, not equitable remedy, "when both money damages and equitable relief are sought, the controlling authority is not *Grupo* but *Deckert*." See *Enron*, 188 F. Supp. 2d at 696; *Deckert*, 311 U.S. at 289. Thus, the Court finds that it was well within its authority to enter the asset freeze that it deemed necessary to maintain the status quo and prevent dissipation of assets during this enforcement action, and to ensure that sufficient funds are available to satisfy any final judgment the court may or may not enter against Defendants.

Further, as the Commission points out, Defendants still refuse to comply with (a) two Court orders to provide a verified accounting of their use of BTCST investors' funds; and (b) the Court's repatriation order, or to even identify whether there are any assets subject to that order. In addition, the Court repeatedly offered to Defendants the opportunity to receive a carve-out from the asset freeze if they complied with the Court's order to provide a verified accounting of the funds and assets obtained. Defendants have not taken advantage of that offer.

Next, Plaintiff asserts that the Court did not make findings of fact and conclusions of law "with sufficient particularity" (Dkt. #61 at 6). "When the material facts are not in dispute, a district court that is analyzing a request for a preliminary injunction may employ informal procedures as long as the record supports the district court's decision." *Hurley v. Gunnels*, 41 F.3d 662 (5th Cir. 1994). Here, the Court found that the Commission made a proper showing for the asset freeze, that the Court has jurisdiction over the subject matter and over Defendants, and that Defendants violated "Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)], and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5]" (Dkt. #14 at 2). The court also found

4

that, "[i]t appears that Defendants used unlawful means to obtain investor funds." *Id*. In its subsequent order, the Court noted that it considered (1) the Commission's Complaint; (2) the Commission's Emergency Motion; (3) the Declaration of Philip Moustakis in Support of the Commission's Emergency Motion and the exhibits appended thereto; (4) Defendants' Response to the Commission's Emergency Motion; and (5) the Commission's Reply in Support of its Emergency Motion (Dkt. #22 at 2). In addition, the Court entered a subsequent order the following day setting forth additional facts finding that the Court had subject-matter jurisdiction over the present case (Dkt. #23). These findings of fact and conclusions of law were sufficient to satisfy Federal Rule of Civil Procedure 52(a).

Finally, Defendants contend that the district court has no power to grant an interlocutory or final injunction against a party over whom it has not acquired valid jurisdiction. Defendants assert that because they have called into question the Court's subject-matter jurisdiction, then the asset freeze should be dissolved. At the time the asset freeze was established, the Court entered an order detailing the basis of its subject-matter jurisdiction, finding that it had subject-matter jurisdiction over the case (Dkt. #23). Defendants have again called into question the subject-matter jurisdiction of the Court, and the Court held a hearing regarding this issue on July 14, 2014.

First, the Court agrees that accepting Defendants' premise that when "[t]he Court is in the process of reconsidering jurisdiction… this Court is without authority to grant injunctive relief," would mean that any party subject to a preliminary injunction could cancel the injunction simply by challenging jurisdiction. This result is not practicable. Second, the Court has concluded for a second time that it does have subject-matter jurisdiction over this case. Thus, this argument is moot. Thus, the Court finds that Defendants' motion is denied.

## CONCLUSION

For the foregoing reasons, the Court finds Defendants' Emergency Motion to Dissolve Asset Freeze (Dkt. #61) is **DENIED**.

**IT IS SO ORDERED**.

**SIGNED this 26th day of August, 2014.**

_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE