# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, § § § | |
| *Plaintiff,* § | Civil Action No. 4:13-cv-00416 |
| v. § | Judge Mazzant |
| § | |
| TRENDON T. SHAVERS, § § § | |
| *Defendant.* | |

## MEMORANDUM OPINION AND ORDER

On June 30, 2022, the Securities and Exchange Commission filed its Status Report and Motion to Reinstate Contempt Proceedings Against Defendant Trendon Shavers (Dkt. #107). On September 15, 2022, the Court ordered Defendant Trendon T. Shavers to show cause at a hearing why he should not be held in civil contempt for violating multiple court orders in this case (Dkt. #109). Defendant failed to appear at the hearing, which was held on September 23, 2022.

Having considered the evidence and the record in this case, the Court finds Defendant in civil contempt.

## BACKGROUND

From February 2011 to August 2012, Defendant Trendon T. Shavers ("Shavers") operated an online investment scheme called Bitcoin Savings and Trust ("BTCST") where he would solicit, and pay all purported investments, in the digital currency Bitcoin. But, as it turns out, BTCST was merely a vehicle for Shavers to operate his own Ponzi scheme. Shavers falsely promised BTCST investors that he would make them significant returns by trading Bitcoin against the U.S. Dollar. In reality though, Shavers used any new investments to pay outstanding BTCST investments as purported "returns," or simply diverted new investments for his own personal use.

After scamming a series of investors, the Securities and Exchange Commission ("SEC") brought a civil action against Shavers and BTCST for conducting fraudulent offers and sales of securities. On September 18, 2014, the Court found that Shavers and BTCST violated Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder; Section 17(a) of the Securities Act of 1933; and Sections 5(a) and 5(c) of the Securities Act of 1933 (Dkt. #88). In its Amended Final Judgement, the Court ordered that Shavers and BTCST were permanently enjoined from committing any future violations under the previously mentioned laws (Dkt. #90). Furthermore, the Court ordered that Shavers and BTCST were liable for disgorgement and prejudgment interest thereon totaling $40,404,667 (Dkt. #90).

Recently, the SEC has tried to enforce the $40,404,667 disgorgement obligation ("Disgorgement Obligation") against Shavers. But it has been an arduous task. On September 17, 2021, the SEC filed an application with the Court to order Shavers to show cause why he should not be held in civil contempt for failing to pay the Disgorgement Obligation (Dkt. #94). Additionally, the SEC moved the Court to compel Shavers to produce a series of financial documents to determine Shavers's ability to pay the Disgorgement Obligation (Dkt. #97).

The Court held a show cause hearing on January 7, 2022, where Shavers and his wife testified. During the hearing, Shavers testified that he understood that he owed over $40 million to the SEC in disgorgement and that he had not paid anything towards that judgment (Dkt. #101 at p. 4). Additionally, Shavers testified that he was currently earning an estimated income of around $4,000 per month (Dkt. #101 at p. 6). Following the show cause hearing, the Court issued an order on January 13, 2022 ("January 13 order") that required Shavers to (1) produce all documents sought in the SEC's document request; (2) respond to the SEC's request for sworn financial statements and supporting documents in the form provided by the SEC; and (3) make six monthly

payments of $400 towards the Disgorgement Obligation (Dkt. #100). However, the Court held its determination of contempt in abeyance until Shavers violated the terms of the order and the SEC moved for an entry of a contempt order (Dkt. #100).

Thereafter, the SEC moved for an entry of contempt because Shavers failed to comply with the January 13 order (Dkt. #102). Specifically, Shavers did not respond to the SEC's request for sworn financial statements and did not provide all of the documents that the SEC requested (Dkt. #102, Exhibit 1 ¶¶ 5–6). The SEC also later informed the Court that Shavers failed to pay two of the monthly payments from the January 13 order (Dkt. #104, Exhibit 1 at pp. 1–2). But, upon the SEC's request, the Court ultimately held its contempt finding in abeyance because the SEC and Shavers agreed to a series of terms, including: (1) Shavers would cure the payment delinquency by paying the SEC $800 by May 13, 2022; (2) Shavers would continue making payments of $400 per month going forward with the amount to be reassessed annually (and to provide documents such as tax returns upon request); (3) Shavers would provide non-notarized sworn financial statements by email on April 28, 2022; and (4) Shavers would provide notarized sworn financial statements by no later than June 24, 2022 (Dkt. #105). The SEC was ordered to provide a status report to the Court by July 1, 2022 (Dkt. #105).

On June 30, 2022, the SEC filed its status report along with a motion to reinstate civil contempt proceedings against Shavers (Dkt. #107). The SEC reported that Shavers failed to provide the sworn financial statements it requested, and Shavers did not make any of the subsequent monthly payments pursuant to the parties' agreement (Dkt. #107 at pp. 2–3). Moreover, the SEC informed the Court that Shavers stopped responding to the SEC's emails regarding his failure to follow the Court's orders (Dkt. #107 at p. 3). Given Shavers's evasiveness

and noncompliance, the SEC asked the Court to find Shavers in civil contempt and incarcerate him (Dkt. #107 at p. 5).

In an order on July 13, 2022 ("July 13 order"), the Court required Shavers to respond to the SEC's motion by July 27, 2022 (Dkt. #108). The Court also warned Shavers that, if he failed to respond to the SEC's motion, then it "may grant the SEC's motion and order appropriate sanctions without further notice being given" (Dkt. #108 at p. 1). Shavers did not respond to the SEC's motion. Subsequently, the Court ordered Shavers to appear at a hearing on September 23, 2022 ("Show Cause Order"), and show cause why he should not be held in civil contempt for violating the Amended Final Judgement, the January 13 order, and the July 13 order (Dkt. #109). Shavers did not appear at the September 23 hearing.

## LEGAL STANDARD

"Courts possess the inherent authority to enforce their own injunctive decrees." *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995) (citing *Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985), *cert. denied*, 474 U.S. 1056 (1986)). "A court order binds not only the parties subject thereto, but also non-parties who act with the enjoined party." *Whitcraft v. Brown*, 570 F.3d 268, 272 (5th Cir. 2009); *see NLRB v. Laborers' Int'l Union of N. Am., AFL-CIO*, 882 F.2d 949, 954 (5th Cir. 1989); *Waffenschmidt*, 763 F.2d at 726 (citing *Ex Parte Lennon*, 166 U.S. 548 (1897)); *see also* FED. R. CIV. P. 65(d)(2) (stating that every injunction and restraining order "binds . . . the following who receive actual notice of it by personal service or otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participations with anyone described in Rule 65(d)(2)(A) or (B).").

A court may enforce its orders through civil contempt, which is intended to compel obedience to a court order. *See In re Bradley*, 588 F.3d 254, 263 (5th Cir. 2009) ("If the purpose of the sanction is to punish the contemnor and vindicate the authority of the court, the order is viewed as criminal. If the purpose of the sanction is to coerce the contemnor into compliance with a court order, or to compensate another party for the contemnor's violation, the order is considered purely civil."). "A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *SEC v. First Fin. Grp. of Tex., Inc.*, 659 F.2d 660, 669 (5th Cir. 1981).

In a civil contempt proceeding, the movant bears the burden of establishing the elements of contempt by clear and convincing evidence. *SEC v. Res. Dev. Int'l LLC*, 217 Fed. Appx. 296, 298 (5th Cir. 2007) (citing *Petroleos Mexicanos v. Crawford Enter., Inc.*, 826 F.2d 392, 401 (5th Cir. 1987)). The elements of contempt the movant must prove by clear and convincing evidence are: (1) a court order is or was in effect; (2) the order requires certain conduct; and (3) the opposing party fails to comply with the court order. *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000); *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992). "The contemptuous action need not be willful so long as the contemnor actually failed to comply with the court's order." *Am. Airlines, Inc.*, 228 F.3d at 581; *see N.L.R.B. v. Trailways, Inc.*, 729 F.2d 1013, 1017 (5th Cir. 1984).

"Upon a finding of civil contempt, the [c]ourt has broad discretion to impose judicial sanctions that would coerce compliance with its orders and compensate the moving party for any losses sustained." *Mary Kay Inc. v. Designs by Deanna, Inc.*, 2013 WL 6246486, at *4 (N.D. Tex. 2013) (citing *Am. Airlines, Inc.*, 228 F.3d at 585). "The paradigmatic, coercive, civil contempt sanction . . . involves confining a contemnor indefinitely until he complies with an affirmative

5

command . . . ." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828 (1994) (citing *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 442 (1911)). Under these circumstances, the contemnor "is able to purge the contempt and obtain his release by committing an affirmative act, and thus carries the keys of his prison in his own pocket." *Id.* (cleaned up). To determine the appropriate sanction for civil contempt, the court considers: "(1) the harm from noncompliance; (2) the probable effectiveness of the sanction; (3) the financial resources of the contemnor and the burden the sanctions may impose; and (4) the willfulness of the contemnor in disregarding the court's order." *Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 567 (5th Cir. 1990) (citations omitted).

## ANALYSIS

As the party moving to hold Shavers in civil contempt, the SEC has the burden to demonstrate, by clear and convincing evidence, that (1) a court order was in effect; (2) the order required certain conduct; and (3) the opposing party failed to comply with the court order. *See Am. Airlines, Inc.*, 228 F.3d at 581. The SEC has satisfied its burden.

Multiple court orders were in effect pertaining to Shavers, including (1) the Amended Final Judgement (Dkt. #90), (2) the Court's January 13 order (Dkt. #100), (3) the Court's July 13 order (Dkt. #108), and (4) the Show Cause Order (Dkt. #109). Moreover, each of these orders required specific conduct. The Amended Final Judgement ordered Shavers to pay over $40,000,000 in disgorgement to the SEC (Dkt. #90). The January 13 order required Shavers to, among other things, make $400 monthly payments to the SEC and respond to the SEC's request for sworn financial statements (Dkt. #100). The Court's July 13 order required Shavers to file a response to the SEC's motion to reinstate contempt proceedings, and the Show Cause Order required Shavers

6

to appear before the Court and explain why he should not be held in civil contempt (Dkt. #108; Dkt. #109).

The SEC has also shown that Shavers failed to comply with these orders. During the January show cause hearing, Shavers testified that he understood that he owed the SEC over $40 million in disgorgement, and that he had not paid anything towards that amount (Dkt. #101 at p. 4). Shavers also testified that he made around $4,000 a month—showing he had the financial ability to pay at least some of the disgorgement award (Dkt. #101 at p. 6). Therefore, the SEC clearly demonstrated that Shavers violated the Amended Final Judgement because he willfully chose not to pay any of the Disgorgement Obligation.[1] *S.E.C. v. Connectajet.com, Inc.*, No. 3:09-CV-1742-B, 2015 WL 6437697, at *2 (N.D. Tex. Oct. 16, 2015) (finding defendant in contempt for failing to pay any of the disgorgement obligation). Even after the January show cause hearing, Shavers has apparently made little attempt to satisfy the Disgorgement Obligation and has missed several scheduled payments to the SEC. The Court sees this as a willful choice to not rectify his past contempt and shows Shavers is still in contempt for failing to meet his Disgorgement Obligation. Similarly, Shavers violated the Court's January 13 order. Specifically, he did not make two of the $400 monthly payments he was ordered to pay, and he did not respond to the SEC's request for sworn financial statements. On top of all of this, Shavers failed to file a response to the SEC's motion to reinstate contempt proceedings and did not appear at the September show cause

---

[1] Although Shavers and the SEC do not address the issue, the Court points out that the failure to pay a disgorgement obligation is punishable by civil contempt. See *S.E.C. v. Connectajet.com, Inc.,* No. 3:09-CV-1742-B, 2015 WL 6437697, at *2 (N.D. Tex. Oct. 16, 2015). While Rule 69 of the Federal Rules of Civil Procedure provides that the Court should enforce a money judgement by writ of execution, the Fifth Circuit views a disgorgement obligation as "more akin to an injunction in the public interest" and "not a mere money judgement or debt." *S.E.C. v. Huffman*, 996 F.2d, 802–03 (5th Cir. 1993) (internal quotation marks omitted). Therefore, district courts within the Fifth Circuit permit disgorgement obligations to be enforced through civil contempt sanctions under Rule 70. *See, e.g.*, *Connectajet.com, Inc.*, 2015 WL 6437697, at *2; *see also* FED. R. CIV. P. 70.

hearing—two more separate grounds for being found in contempt of court. In sum, the SEC has adequately demonstrated Shavers's noncompliance with the Court's orders on multiple occasions.

Having found Shavers in civil contempt, the Court must consider the appropriate sanction. Four factors guide this inquiry: "(1) the harm from noncompliance; (2) the probable effectiveness of the sanction; (3) the financial resources of the contemnor and the burden the sanctions may impose; and (4) the willfulness of the contemnor in disregarding the court's order." *Lamar Fin. Corp.*, 918 F.2d at 567. Applying the factors here, the Court finds imprisonment is the most appropriate sanction for Shavers's conduct.

In the SEC's case, the harm from noncompliance is high; it is currently seeking to enforce a disgorgement order for over $40,000,000 that Shavers refuses to pay. Imprisonment is also a highly effective sanction because Shavers has consistently shown he is unwilling to obey the Court's orders. Additionally, Shavers refuses to cooperate with the SEC—exhibited by his failure to honor the agreements between the two parties and even cutting off communication with the SEC altogether. In that vein, imprisonment might be the only effective sanction in this case considering Shavers's repeated noncompliance and evasiveness. Financial sanctions would be ineffective for similar reasons. Shavers already faces a hefty financial burden in the Disgorgement Obligation, and he has barely paid anything towards that obligation. So, adding further financial sanctions would not be particularly helpful. Even when the Court ordered Shavers to pay a heavily reduced sum, like in the Court's January 13 order requiring him to pay $400 per month, Shavers did not follow through and make all of the required payments. This behavior indicates that financial sanctions will accomplish nothing. Finally, Shavers has willfully disregarded multiple court orders in this case as outlined above—culminating in his recent nonappearance at the show cause hearing.

Shavers's flagrant disregard for the Court's orders on multiple occasions leads to only one conclusion: Shavers will only comply with the Court's orders if he is incarcerated.

The Court is mindful of the fact that imprisonment is an extreme civil contempt remedy. *See Bagwell*, 512 U.S. at 828. But it sees no other way to coerce Shavers to comply with the Court's orders. Moreover, it bears emphasizing that Shavers holds the "keys of his prison in his own pocket." *See id.* To the extent he demonstrates compliance with the Court's orders, or shows he cannot comply with the orders, Shavers will be released.

## CONCLUSION

It is therefore **ORDERED** that Defendant Trendon T. Shavers is hereby in **CIVIL CONTEMPT OF THIS COURT** for violating (1) the Amended Final Judgement (Dkt. #90), (2) the January 13 order (Dkt. #100), (3) the July 13 order (Dkt. #108), and (4) the Show Cause Order (Dkt. #109).

It is further **ORDERED** that Shavers shall be imprisoned for civil contempt. Shavers shall turn himself into the U.S. Marshal's Service, U.S. Courthouse Annex, 200 N. Travis Street, Mezzanine Level, Sherman, Texas, no later than 2:00 p.m. on November 3, 2022. If Shavers fails to appear by the required time, the Court will issue a warrant for his arrest. Shavers shall remain in custody until he complies with the Court's orders, which shall be done by completing the following:

(1) Shavers shall produce the sworn financial statements that the SEC requested. Once Shavers has demonstrated that he has complied with this requirement, or shown that he cannot, Shavers will purge himself of his contempt for failing to provide sworn financial documents to the SEC pursuant to the Court's January 13 order (Dkt. #100);

(2) Shavers shall pay $400 to the SEC by no later than ten (10) days after entry of this Order, which will go towards his Disgorgement Obligation. Shavers shall pay the SEC $400 on the 5th day of every month thereafter until (i) his Disgorgement Obligation is paid in full, or (ii) the Court finds on Shavers's or the SEC's motion that he has a complete inability to pay the Disgorgement Obligation. Shavers shall make payments: (i) from a bank account via Pay.gov through the SEC website at https://www.sec.gov/paymentoptions; or (ii) by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission, which shall be delivered or mailed to Enterprise Services Center, Accounts Receivable Branch, 6500 South MacArthur Boulevard, Oklahoma City, OK 73169, and shall be accompanied by a letter identifying the case title, civil action number, and name of this Court; naming Trendon Shavers as a defendant in this action; and specifying that payment is made pursuant to the Amended Final Judgment. Shavers shall file proof of each payment on ECF.

It is further **ORDERED** that that SEC and Shavers may agree to adjust the amount to be paid in the subsequent monthly payments without further order of the Court.

It is further **ORDERED** that Shavers's incarceration will be suspended if Shavers provides the sworn financial statements to the SEC and makes his first $400 payment to the SEC by no later than ten (10) days from the entry of this Order. However, if Shavers fails to make the subsequent monthly payments to the SEC, the SEC shall notify the Court. Upon receiving any notice, the Court will issue a warrant for Shavers's arrest and reinstate his incarceration.

**IT IS SO ORDERED.**

SIGNED this 24th day of October, 2022.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE